**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DEWAYNE MELTON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | Civil Action No.:1:08-cv-174 |
| ) | |
| **NATIONAL DAIRY HOLDINGS, L.P.; et al.,** ) | |
| ) | **JURY DEMAND** |
| ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION BY DEFENDANT, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL UNION NO. 991, TO REQUIRE PLAINTIFFS TO REPLEAD THEIR COMPLAINT**

**COME NOW** the plaintiffs in the above-styled cause and submit the following in response and opposition to the Motion to Require Plaintiffs to Replead Their Complaint, submitted by Defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 991:

**I.      Facts and Procedural History**

1.      On March 12, 2008, plaintiffs filed their Complaint in the above-styled matter against defendants National Dairy Holdings, L.P. ("National Diary"); Dairy Fresh of Alabama, LLC ("Diary Fresh"); and the National International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 991 ("Teamsters")

2.      The Complaint numbers thirty-nine (39) pages, consisting of 293 separately numbered paragraphs and is divided into the following separately identified sections:

      I.     Introduction (Paragraph 1),
      II.    Jurisdiction and Venue  (Paragraphs 2-4)
      III.   Parties (Paragraphs 5-14)
      IV.   Statement of Facts and Claims
           • Plaintiff DeWayne Melton (Paragraphs 16-70)
           • Plaintiff Pierre Harvey (Paragraphs 71-119)
           • Plaintiff Henry Cody (Paragraphs 120-168)
           • Plaintiff Larry Amos (Paragraphs 169-219)
           • Plaintiff J.T. Brooks (Paragraphs 220-276)
           • Count I: §1981 Violations Racial Harassment, Discrimination and Retaliation (Paragraphs    277-293).

[Doc. 1].

      3.     Each plaintiff has specific facts giving rise to his claims set forth separately and in great detail under their respective designations with the Statements of Facts and Claims in the Complaint. [Doc. 1, pp. 4-35].

      4.     On March 28, 2008, defendants National Dairy and Dairy Fresh sought an unopposed extension of time in which to Answer the Complaint, which this Court granted, allowing these defendants until May 8, 2008, to submit their responsive pleadings.

      5.     On May 7, 2008, defendants National Dairy and Dairy Fresh submitted their respective Answers and Affirmative Defenses.  On May 8, 2008, the Teamsters untimely submitted its Answer and Affirmative Defenses.[1]

      6.     On June 19, 2008, counsel for all parties participated in a Rule 26 conference and a proposed Rule 26 Order was submitted to the Court on June 24, 2008.  During this conference, discussion was had regarding various discovery matters and at no time during this conference did counsel for the Teamsters give any indication that they were unable to discern the claims asserted

---

[1] It is noted that plaintiffs did not previously raise the issue of the Teamster's untimely Answer, as the Teamsters did not submit such a request for an extension of time to submit a responsive pleading, as did defendants National Dairy and Dairy Fresh.

against them or that they foresaw and complications in discovery as a result of same.

      7.      On June 25, 2008, the Court entered a Scheduling Order in this matter.

      8.      On June 25, 2008, defendant Dairy Fresh and National Dairy each submitted Amended Answers to the Complaint.

      9.      On June 24, 2008, defendants Dairy Fresh and National Dairy noticed the depositions of each named plaintiff. On June 26, 2008, defendants Dairy Fresh and National Dairy submitted Interrogatories and Request for Production to each named plaintiff. As of today's date, Initial Disclosures are due to be exchanged by all parties.

      10.      On June 27, 2008, fifty (50) days after the Teamsters submitted their Answer and Affirmative defenses, the Teamsters submitted the present Motion requesting the plaintiffs replead the Complaint setting out "separate counts" and "specific things" that each plaintiff claims the Teamsters did that violated 42 U.S.C. §1981.

**II.**    **Argument**

The Teamsters presently move this Court to order the Plaintiffs to replead their Complaint, relying solely on the Eleventh Circuit's holding in Davis v. Coca-Cola Bottling Co., 516 F. 3d 955 (11th Cir. 2008). For the reasons set forth herein, the defendant's reliance on *Davis* is misplaced, the plaintiffs have sufficiently plead their claims, and the defendant's Motion is due to be dismissed.

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." As set forth in Davis, the "[p]urpose of Federal Rule of Civil Procedure requiring complaint to contain a short, plain statement of basis for relief is to give defendant fair notice of what plaintiff's claim is and grounds upon which it rests." Id. at 974, citing Fed.Rules Civ.Proc.Rule 8(a). For a complaint to satisfy "notice" pleading

3

requirement, factual allegations of complaint must simply be enough to raise right to relief above the speculative level. Id., citing Fed.Rules Civ.Proc.Rule 8(a). As recently addressed by the Supreme Court, the standard upon which pleadings are to be judged is whether they, "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, --- U.S. ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

Since the holding in Davis, the Eleventh Circuit has also revisited the pleading standard in Grimsley v. Marshalls of MA, Inc., 2008 WL 2435581, 5 (11th Cir. 2008), in which it analyzed the requirements as set out by Fed.R.Civ.P. 8 and 10:

> In addition, Rule 10 requires each claim founded on a separate transaction or occurrence to be stated in separate counts **if needed for clarity**. Fed.R.Civ.P. 10(b)."These rules work together to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." Davis, 516 F.3d at 980 n. 57 (quotation marks omitted).

Id. at 5.(Emphasis added).

Plaintiffs have, pursuant to Fed.R.Civ.p. 8 and 10, sufficiently plead their claims against all defendants, including the Teamsters. Each of the plaintiffs have the facts giving rise to their claims against each named defendant, including the Teamsters, set out specifically within their designated portions of the Statement of Facts and Claims in the Complaint. With regard to the Teamsters, Plaintiff DeWayne Melton specifically alleged, among other things, the following acts giving rise to his claims within his designated portion of the Complaint: (1) Plaintiff Melton filed a grievance with his union, IBD Local 991, regarding a discriminatory write up; however, no action was taken

on his behalf [Doc. 1, ¶¶24-25]; (2) in mid 2006, Plaintiff Melton filed a grievance with his union, IBD Local 991, regarding his employers' discriminatory failure to promote him to a Lead Position, however the normal grievance procedures were not followed [Doc. 1, ¶¶ 35-38]; (3) Plaintiff Melton filed grievances with his union, IBD Local 991, about the racial discrimination and harassment, however, the Defendant took no action to stop or remedy the discrimination and it continued [Doc. 1, ¶P52-53]; (4) Plaintiff Melton filed a grievance with his union, IBD Local 991, regarding damage to his car and the employers' racially discriminatory parking practices, however, no action was taken with regards to these grievances [Doc. 1, ¶¶ 54-61]; (5) in February 2007, Plaintiff Melton filed a grievance with his union, IBD Local 991, regarding his write up and termination, however despite the fact that Melton provided the Union with witness names and contact information as proof to discredit his termination cause, the Teamsters failed to fully investigate his grievance or to talk to his witnesses and instead took the word of a white driver as fact and upheld the termination [Doc. 1, ¶¶ 62-70]; and (6) after Plaintiff Melton's termination, the Teamsters would not return Plaintiff Melton's telephone calls or answer his questions regarding the grievance status, and his arbitration hearing was held without his knowledge and he was not afforded an opportunity to be present for the hearing as the Teamsters failed to give him notice of the arbitration or to include him in any way. [Doc. 1, ¶¶ 62-70].

With regard to the Teamsters, Plaintiff Pierre Harvey specifically alleged, among other things, the following acts giving rise to his claims within his designated portion of the Complaint: (1) Plaintiff Harvey filed a grievance with his union, IBD Local 991, regarding a discriminatory write up; however, to his knowledge, no action was taken by the Teamsters in response to his complaint [Doc. 1, ¶¶ 74-82].

With regard to the Teamsters, Plaintiff Henry Cody specifically alleged, among other things, the following acts giving rise to his claims within his designated portion of the Complaint: (1) Plaintiff Cody filed a grievance with his union, IBD Local 991, stating that he felt disciplinary action applied to him was discriminatory because white drivers were not disciplined [Doc. 1, ¶¶ 122-125]; (2) Plaintiff Cody filed a complaint with all Defendants about damage to his car on company grounds, however, nothing was done [Doc. 1, ¶¶ 127-128]; (3) Plaintiff Cody filed a grievance with his Shop Steward against Brewer for cursing at him and about the discriminatory parking practices, however to his knowledge, no action was taken by the Union regarding his grievance against Brewer. [Doc. 1, ¶¶ 127-141]; (4) Plaintiff Cody filed a union grievance with his union, IBD Local 991, regarding his Supervisor's harassing and discriminatory behavior, the property damage to his car and alleging racial discrimination by his Supervisor and other members of management, however his complaints of racial discrimination were not addressed by the Union [Doc. 1, ¶¶ 148-150]; and (5) around October 23, 2007, Plaintiff Cody filed a union grievance regarding a write up and stated that the write up was discrimination based on his race, however the Teamsters took the word of a white supervisor and gave no credence to Plaintiff Cody's statement of events [Doc. 1, ¶¶ 165-166].

With regard to the Teamsters, Plaintiff Larry Amos specifically alleged, among other things, the following acts giving rise to his claims within his designated portion of the Complaint: (1) Plaintiff Larry Amos has been denied the opportunity to perform his duties as a "shop steward [Doc. 1, ¶ 171]; (2) Plaintiff Amos filed a union grievance with IDB Local 991 regarding a discriminatory write ups he and plaintiff Harvey had received about taking their lunch while white drivers were allowed to take their lunch wherever and with whomever they chose, however to Plaintiff Amos's knowledge, no action was taken by the Teamster defendant following his grievance and the write

ups were left in his file and in Plaintiff Harvey's file. [Doc. 1, ¶¶ 179-181]; (3) since being voted into the position in 2000, Plaintiff Amos has held the title of Shop Steward, a position in the Union, however he is not treated the same by the Teamsters as the two white Shop Stewards [Doc. 1, ¶¶ 197-204]; (4) the Teamsters promoted one of the white Shop Stewards to Senior Steward, although Plaintiff Amos had more seniority and had been a Shop Steward longer than either of the white Shop Stewards [Doc. 1, ¶¶ 197-204]; (5) the Union Defendant ignores the complaints Plaintiff Amos presents to them or it fails to address the problems [Doc. 1, ¶¶ 197-204]; (6) the Union Defendant has given all of the authority to the white Shop Stewards, while giving Plaintiff Amos little or no authority to handle problems when they are presented to him [Doc. 1, ¶¶ 197-204]; (7) the District Union Representative fails to return calls to Plaintiff Amos and only comes to the Plant when he knows that Plaintiff Amos will be out on his route [Doc. 1, ¶¶ 197-204]; and (8) Plaintiff Amos has tried to file grievances for himself and the other black drivers for discriminatory violations of seniority in scheduling hours, however the white Shop Steward overrides his grievances and keeps them from being filed with the Union [Doc. 1, ¶¶ 206-208]

With regard to the Teamsters, Plaintiff J.T. Brooks specifically alleged, among other things, the following acts giving rise to his claims within his designated portion of the Complaint: (1) Plaintiff Brooks filed a union grievance regarding his Supervisor's unprofessional and discriminatory actions, however, no action was taken [Doc. 1, ¶ 230]; (2) Plaintiff Brooks filed a union grievance alleging discriminatory scheduling practices which occurred in May 2007, however his schedule was not changed [Doc. 1, ¶¶ 231-235]; (3) Plaintiff Brooks filed Union grievances regarding his suspension and termination and he was ultimately returned to work on July 27, 2007, however the Union defendant did not afford Brooks a hearing and he did not fully agree with the terms of

reinstatement which they negotiated for him [Doc. 1, ¶¶ 246-247]; (4) on or about September 4, 2006, several African American drivers, including four of the Plaintiffs, filed a union grievance alleging discrimination in the parking and work hour practices, however, the defendants, including the Teamsters, brushed aside their complaints [Doc. 1, ¶¶266-268]; and (5) in the September 2006 grievance, the African American drivers also stated that the employer discriminated by not allowing the African American drivers to adequately defend themselves when accused of and/or written up for policy violations, however to plaintiff's knowledge, no action was taken by the Teamsters to remedy the situation [Doc. 1, ¶¶ 269-270].

Additionally, within the Count, plaintiffs have set out, again, the basis for their claims of racial harassment, racial discrimination and retaliation. [Doc. 1, ¶¶ 277-293]. Clearly, upon a review of the Complaint and the specific sub-sections therein related to each plaintiff and each plaintiff's claims, the plaintiffs have met their pleading requirements as set out in Rules 8 and 10 and have given the Teamsters fair notice of the basis for each of their claims. In order to avoid any confusion regarding the nature of each plaintiff's claims asserted against the defendants, the plaintiffs asserted a detailed factual basis giving rise to each of their claims in separately titled sections of the Complaint, thus clarifying the claims and basis for same of each plaintiff with regard to each defendant.

The Teamsters have raise questions about the inclusion of a 42 U.S.C. §1983 claim and possible class action allegations. Plaintiffs concede that the inclusion of any potential claim asserted via 42 U.S.C. §1983 is result of typographical error and that they assert no such claims as no governmental actors are involved in the present suit. Additionally, for clarification purposes, the plaintiffs have made no class allegations within their Complaint nor do they intend to pursue and

such allegations in the present suit.

The Teamsters averment that the plaintiffs are required under <u>Davis</u> to assert "each instance [of racial discrimination] in a Count of its own, with identifiable allegations about each such instance (including dates)." [Doc. 39, p. 2). However, plaintiffs can find no legal basis for this assertion nor have the defendant cited any. <u>Davis</u> does not require that all claims of all plaintiffs in all suits be asserted such that each act of discrimination or harassment be set forth in a separate count. Nor do Rules 8 and 10 have any such stringent requirements. In fact, the Eleventh Circuit made it clear in it's subsequent holding in <u>Grimsley v. Marshalls of MA, Inc.</u>, that "Rule 10 requires each claim founded on a separate transaction or occurrence to be stated in separate counts **if needed for clarity**." 2008 WL 2435581, 5 (11th Cir. 2008)(emphasis added). As set out above, plaintiffs have specifically delineated their Complaint as to clarify each of their claims and the acts giving rise to each claims such that separate counts are not necessary, and such that the defendant was able to discern the claims being asserted against it, as addressed below.  Thus, plaintiffs have met their pleading requirements under Rules 8 and 10 and the applicable law of this Circuit.

The Teamsters allege some fifty days after they have answered the Complaint and submitted their affirmative defenses to same, that they are having to "guess at the real nature of the Plaintiffs' claims against the Union." (Doc 39, p. 2).  This averment is belied, however, by the undisputed fact that the Teamsters were, in fact, able to discern the claims asserted against is as they submitted on May 8, 2008, an Answer and Affirmative Defenses to the claims against them.  Under Rules 8 and 10 and the Supreme Court's holding in <u>Twombly</u>, plaintiffs are required only to assert claims in such a way that they, "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Bell Atlantic Corp. v. Twombly</u>, --- U.S. ----, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007).

As the defendant has submitted an Answer **and** numerous affirmative defenses to the Complaint, it cannot now assert that it does not have "fair notice" of the claims asserted against it. Plaintiffs have to assume that the eighteen (18) affirmative defenses submitted to the Court on May 8, 2008, by the Teamsters, as well as the numerous admissions, denials, and clarifications made in response to plaintiffs' factual averments within the Complaint, have been submitted to the Court and to all parties by the defendant in good faith, and not in violation of Fed.R.Civ.P. 11.[2] [Doc. 23]. Specifically, the Teamsters have submitted, in part, the following affirmative defenses to plaintiffs' claims: plaintiffs' claims are barred by statue of limitations; plaintiffs' claims are barred because of their failure to mitigate their damages; the treatment of the plaintiffs by Teamsters was at all times based upon reasonable, legitimate, nondiscriminatory factors other than the plaintiffs' race or any other protected factor; plaintiffs' claims are barred because Teamsters did not subject plaintiffs to any adverse employment action or discrimination based up on their race; plaintiffs' claims are barred, in whole or in part, by plaintiffs' failure to exhaust their contractual remedies arising under the Collective Bargaining Agreement, Teamsters' Constitution and By-Laws and/or internal union remedies; and that plaintiffs are not entitled to punitive damages. [Doc. 23, pp. 23-26]. Such defensive affirmations by the defendant hardly supports it's argument that it is unable to discern the claims asserted against it.

The Teamsters try to liken the present Complaint to that addressed by the Eleventh Circuit in Davis, however the two are quite distinguishable. In Davis, the Court was presented with a

---

[2] The Teamsters now assert that the Complaint must be replead so that "the Union is in a position to raise the proper defenses." [Doc. 39, p. 2]. However, the defendant has already raised eighteen (18) affirmative defenses in it's Answer to the Complaint and plaintiff can only assume these were "proper" and submitted by the defendant in good faith, thus belying it's present claim to not be in a position to raise proper defenses.

scenario in which the plaintiffs' Complaint was deemed a "shot gun pleading," containing three counts with little detail or specific examples or basis for the claims asserted and, as a result, in which claims were still being "discovered" or asserted by the parties at the summary judgment and appellate levels. 516 F. 3d at 979-984. As set out in great detail above, this is simply not the present case. Plaintiffs have set forth facts giving rise to their individual claims in great detail, and have organized the Complaint in such a way as to clarify each plaintiff's claims from the others. This is not the scenario chastised by the Court in Davis, where meritous and possibly non-meritous plaintiffs and claims are lumped together with no distinction as, the Court deemed, part of some overall strategy to bombard a defendant with claims, whether factually based or not. Within the present factual allegations, the plaintiffs have set forth specific instances of discrimination/harassment/retaliation including dates, names of the individuals involved, specific adverse employment actions, specific discipline issued, specific promotion(s) denied, specific termination events, specific complaints made, and even comparator information. [Doc. 1, pp. 4-35]. Contrary to the defendant's assertion, and as evidence by the Answer submitted on it's behalf, the Complaint presently before the Court is not a "shot gun " pleading as dealt with in Davis. The present Complaint is more akin to that submitted to the District Court in American Resources Ins. Co., Inc. v. Warrantech, in which the defendant very similarly requested the plaintiff replead a Complaint based on the holding in Davis. 2008 WL 1818922, 6 (S.D.Ala. 2008). In Warrantech, the defendant complained that the amended complaint precluded them from being able to tell which of the forty numbered paragraphs of factual allegations supported which counts, however, as the District Court noted, the defendant "proceed[ed] to perform an excellent job of pairing them up." Id. As the defendant in Warrantech was able to discern the claims against it, the District Court

denied the defendant's Motion for More Definite Statement, finding, that "[n]o doubt the amended complaint could be further improved, but it is not the monster of confusion against which the Eleventh Circuit's frustration has been vented." citing E.g., Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 979- 83 (11th Cir.2008). In the case at bar, it is undisputed that the Teamsters had no problem in replying to and asserting specific defenses to the plaintiffs' claims asserted against it. Nor is the present Complaint a "shot gun pleading" as addressed in Davis. As in Warrantech, the defendant has demonstrated its comprehension of the claims asserted against it and its Motion seeking a repleading of the Complaint is due to be denied.

**WHEREFORE, PREMISES CONSIDERED**, the plaintiffs respectfully pray the Court deny the defendant's Motion for all reasons as set forth above.

Respectfully submitted,

s/ Temple D. Trueblood
Ann C. Robertson
Temple D. Trueblood
Counsel for Plaintiff

OF COUNSEL:
WIGGINS, CHILDS, QUINN & PANTAZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500

CO-COUNSEL
Bobbie S. Crook, Esq.
367 South St. Andrews Street
Dothan, Alabama 36301
(334) 671-8062

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon the following via filing through the CM/ECF system:

Timothy A. Palmer
Brian R. Bostick
Sandra B. Reiss
Veronica L. Merritt
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, AL 35203-2118

Mary E. Olsen
J. Cecil Gardner
M. Vance McCrary
The Gardner Firm, P.C.
P.O. Box 3103
Mobile, AL 36652

On this the 9th day of July, 2008.

                                              s/ Temple D. Trueblood
                                              OF COUNSEL