IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

DEWAYNE MELTON, *et al.*,          )
                                   )
        Plaintiffs,                )
                                   )
v.                                 )        Case No. 1:08-cv-174-TFM
                                   )        [wo]
NATIONAL DAIRY LLC, *et al.*,      )
                                   )
        Defendants.                )

## MEMORANDUM OPINION

This action is assigned to the undersigned magistrate judge to conduct all proceedings

and order entry of judgment by consent of all the parties (Docs. 27-29, filed June 17, 2008)

and 28 U.S.C. § 636(c).  Pending before the Court are the *Motion for Summary Judgment of*

*Defendants National Dairy Holdings, L.P. and Dairy Fresh of Alabama, LLC* (Doc. 94, filed

August 3, 2009) and the *Motion for Summary Judgment of Defendant Teamsters* (Doc. 102,

filed August 3, 2009).  The motions have been fully briefed and are now ripe for review.

Upon consideration of the motions, the Court finds they are due to be **GRANTED**.

### I.   PARTIES

Plaintiffs are Dewayne Clennon Melton ("Melton"), J.T. Brooks ("Brooks"), Larry

Amos ("Amos"), Pierre Harvey ("Harvey"), and Henry Cody ("Cody").  Plaintiffs are all

employees or former employees of Defendant Dairy Fresh of Alabama, LLC.

Defendants are Dairy Fresh of Alabama, LLC ("Dairy Fresh"), National Dairy LLC

("National Dairy"), and The International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers, Local Union No. 991 ("Teamsters" or "the Union").

## II.  JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. § 1981 (Civil Rights Act of 1866, as amended).  The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

## III.  NATURE OF THE CASE

The underlying facts of this case are necessarily viewed in favor of the nonmovant plaintiff.  Specifics for each plaintiff will be incorporated in the respective sections pertaining to each plaintiff and their various claims.  Generally, Plaintiffs are all African American current or former drivers for Dairy Fresh and its parent company National Dairy.  All five plaintiffs were and are members of the Union.  Plaintiffs initiated this suit on March 12, 2008 when they filed their complaint.  *See* Doc. 1.  Defendants timely filed their respective answers.  *See* Docs. 21- 23.  After Defendants Dairy Fresh and National Dairy filed their motion for judgment on the pleadings, the Plaintiffs conceded that a claim under 42 U.S.C. § 1983 would not stand because there were no governmental actors involved in the suit and stated the inclusion of § 1983 was a typographical error.  Moreover, they stated they had no intention of pursuing a pattern or practice of discrimination claim and were not bringing suit as a class action.  Therefore, the Court granted the motion in part and denied

the motion in part.  In response to the Court order to amend, Plaintiffs filed their amended

complaint on October 17, 2008.  *See* Doc. 51, Amended Complaint.  The Plaintiffs allege

claims under 42 U.S.C. § 1981 for racial harassment, discrimination, retaliation, and hostile

work environment.

On January 30, 2009, Defendants filed a joint motion for summary judgment against

Larry Amos stating that he was judicially estopped from pursing his claims because he did

not disclose the claims to the bankruptcy court.  After the motion was ripe for review, the

Court denied the joint motion for summary judgment as to Larry Amos.

After a lengthy discovery period, Defendants filed their respective motions for

summary judgment.  *See* Docs. 94 and 102.  In addition to the motions, Defendants filed their

briefs in support and a number of evidentiary attachments.  *See* Docs. 95-111.  Plaintiffs

timely filed their consolidated response on September 8, 2009.  *See* Doc. 120.  Afterwards,

Defendants filed a motion to strike two exhibits to Plaintiffs' consolidated response,

specifically the Declaration of Plaintiffs' Counsel, Bobbie Crook and the Purported

Transcription of Tape Recording.  *See* Docs. 121 and 123.  Plaintiffs filed responses in

opposition and also filed a motion to substitute the declaration of Melton for Bobbie Crook's

declaration.  *See* Docs. 128 and 130.  The Court heard the matters on October 13, 2009.

Afterwards, the Court granted the motion to strike the declaration of Bobbie Crook, denied

the motion to substitute the declaration of Melton, and granted the motion to strike the

transcript of the tape.  *See* Doc. 133.  The Court did permit Plaintiffs to substitute the tape

itself for the transcript. *Id*. As such, the Court for summary judgment purposes considers the tape, but does not consider either the declaration or the transcript. The motions for summary judgment are fully briefed and now ripe for this Court's review.

## IV. SUMMARY JUDGEMENT STANDARD

A party in a lawsuit may move a court to enter summary judgment before trial. FED. R. CIV. P. 56(a) and (b). Summary judgment is appropriate when the moving party establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). At the summary judgment juncture, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id*. at 249, 106 S.Ct. at 2511. Only disputes about the material facts will preclude the granting of summary judgment. *Id.* A material fact is one "that might affect the outcome of the suit under governing law," and a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.; *accord Greenberg v. Bell-South Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1277 (11th Cir. 2005) (quoting *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344-45 (11th Cir.

2003)) ("In determining whether an issue of fact is 'genuine' for the purpose of defeating

summary judgment, we ask whether the evidence is 'such that a reasonable jury could return

a verdict for the nonmoving party.'"). Thus, the initial burden of proof rests on the movant.

*Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554; *Gonzalez*, 161 F.3d at 1294. This burden is

satisfied when the movant shows that if the evidentiary record were reduced to admissible

evidence at trial, it would be insufficient to permit the non-movant from carrying its burden

of proof. *Celotex*, 477 U.S. at 322-23; 106 S.Ct. at 2552-53. The admissibility of evidence

is subject to the same standards and rules that govern admissibility of evidence at trial.

*Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing

*Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

Once the movant meets its burden under Rule 56, the non-movant must designate

specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the

motion for summary judgment are likewise insufficient to defeat a proper motion for

summary judgment. *Lejaun v. Nat'l Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177,

111 L.Ed.2d 695 (1990); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997)

(conclusory assertions in absence of supporting evidence are insufficient to withstand

summary judgment). "Speculation does not create a *genuine* issue of fact." *Cordoba v.

Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citation omitted) (emphasis in

original).  The party opposing summary judgment must respond by setting forth specific evidence in the record and articulating the precise manner in which that evidence supports his or her claim, and my not rest upon the mere allegations or denials of the pleadings.  FED. R. CIV. P. 56(e); *Johnson v. Board of Regents of University of Georgia*, 263 F.3d 1234, 1264 (11th Cir. 2001).  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.  *See Anderson*, 477 U.S. at 249-50, 106 S.Ct. at 2511 (citations omitted).  Thus, to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus.*, 475 U.S. at 586 106 S.Ct. at 1356 (citations omitted).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the nonmovant.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *Johnson*, 263 F.3d at 1242-43.  Further, "all justifiable inferences are to be drawn in [that party's] favor." *Anderson*, 477 U.S. at 255; 106 S.Ct. at 2513; *see also McCormick*, 333 F.3d at 1243 (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23, 106 S.Ct. at 2552-53.  In other words, summary judgment is proper after adequate time for discovery and upon motion

against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case.  *Id*. at 322, 106 S.Ct. at 2552.

## V.   LAW - GENERALLY

"This Circuit has routinely and systematically grouped Title VII and § 1981 claims

for analytic purposes."  *Jimenez v. Wellstar Health Sys.*, — F.3d —, — , 2010 WL 550827,

*5 (11th Cir. 2010); *accord Brown v. Ala. Dep't of Transp.*, — F.3d — , — n. 6, 2010 WL

605582, *7 n. 6 (11th Cir. 2010); *see also  Alexander v. Fulton County, Ga.*, 207 F.3d 1303,

1314 n. 6 (11th Cir. 2000) (quoting *Standard v. A.B.E.L. Servs.*, 161 F.3d 1318, 1330 (11th

Cir. 1998) ("Both [Title VII and § 1981] have the same requirements of proof and use the

same analytical framework, therefore we shall explicitly address the Title VII claim with the

understanding that the analysis applies to the § 1981 claim as well.").  As such, this Court

will use Title VII cases interchangeably with § 1981 cases.

42 U.S.C. § 1981 prohibits intentional discrimination on the basis of race in the

making and enforcing of public and private contracts, including employment contracts.

*Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472 (11th Cir. 1999) (citing *Johnson v. Railway

Express Agency*, 421 U.S. 454, 459-60, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975)).

Specifically, § 1981 provides:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same
right in every State and Territory to make and enforce contracts, to sue, be
parties, give evidence, and to the full and equal benefit of all laws and
proceedings for the security of persons and property as is enjoyed by white

citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. § 1981.  Thus, § 1981 provides a cause of action for race-based employment discrimination including wrongful termination, retaliation, and a racially hostile work environment.

The elements of a cause of action under § 1981 are "(1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Kinnon v. Arboub, Gopman & Assocs., Inc.*, 490 F.3d 886, 891 (11th Cir. 2007) (quoting *Jackson v. Bell-South Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004)); *accord Jimenez*, — F.3d at — , 2010 WL 550827 at *2 (11th Cir. 2010).  Therefore, to survive summary judgment, Plaintiffs must identify a genuine issue of material fact as to each element. *Kinnon*, 490 F.3d at 891.

To show that a defendant acted with discriminatory purpose - i.e., element 2 of the § 1981 cause of action - a plaintiff must present either (1) statistical proof of a pattern of

discrimination, (2) direct evidence of discrimination, which consists of evidence which, if believed, would prove the existence of discrimination without inference or presumption, or (3) circumstantial evidence of discriminatory intent using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973). *See Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997). The Eleventh Circuit has defined direct evidence of discrimination as "evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Damon*, 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 641 (11th Cir. 1998)). "Only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (internal quotations and citations omitted). "If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence." *Id.* (citations omitted). Thus, "remarks by a non-decision maker[ ] or remarks unrelated to the decision making process itself are not direct evidence of discrimination." *Standard*, 161 F.3d at 1330. When a plaintiff has direct evidence, he need not rely on the *McDonnell Douglas* framework. *Holifield*, 115 F.3d at 1561. However, in the usual case, direct evidence and statistical evidence are not present, and the plaintiff must rely on circumstantial evidence to prove discriminatory intent using the burden-shifting framework of *McDonnell Douglas* and its progeny. *Cf. Burlstein v. Emtel, Inc.*, 137 Fed.

Appx. 205, 208 (11th Cir. 2005) (unpublished) ("In cases involving circumstantial evidence of discrimination or retaliation under Title VII and § 1981, courts use the analytical framework set forth in *McDonnell Douglas*.").

First, under *McDonnell Douglas*, a plaintiff must create an inference of discrimination by establishing a prima facie case. *Williams v. Motorola*, 303 F.3d 1284, 1293 (11th Cir, 2002). To do so, the plaintiff must show (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the job; and (4) he was replaced by someone outside the protected class or was treated less favorably than a similarly situated person outside the protected class. *Holifield*, 115 F.3d at 1562. Next, should the plaintiff establish a prima facie case, the burden shifts to the defendant to present legitimate, nondiscriminatory reasons for the employment action. *Id.* at 1564. Although the establishment of a prima facie case shifts the burden of production to the defendant, it does not reallocate the burden of persuasion. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747,125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct.1089, 1093, 67 L.Ed.2d 207 (1981) ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.")). Once defendant has presented a legitimate, nondiscriminatory reason for its action, the burden shifts back to the plaintiff to produce "sufficient evidence to find that the employer's asserted justification is false" and in reality, a pretext for unlawful, intentional discrimination. *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000).  In other words, at the summary judgment stage, the plaintiff may survive by providing a prima facie case and evidence sufficient for a jury to find that the employer's proffered explanation is false.  *Reeves*, 530 U.S. at 147-48, 120 S.Ct. at 2108-09.

Now that the Court has detailed the applicable law, it will turn to the claims made by the Plaintiffs.

## VI.  ABANDONED CLAIMS

Plaintiffs have not responded to several of the arguments asserted by Dairy Fresh, National Dairy, and the Union, but did not address the remainder.  Therefore, the Court finds that those claims not addressed have been abandoned.  *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (citations omitted) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *see also Robinson v. Regions Fin Corp.*, 242 F.Supp.2d 1070, 1075 (M.D. Ala. 2003) (Where Plaintiff's opposition to motion for summary judgment addresses only some claims, the remainder were deemed abandoned).  Consequently, the Court will only address with specificity the remaining claims addressed by Plaintiffs in their collective response to the summary judgment motions.  *See* Doc. 120 generally.

## VII.  DEWAYNE MELTON

Melton levels several allegations against Defendants National Dairy, Dairy Fresh, and

the Union.  The claims against National Dairy and Dairy Fresh are the same and will be addressed together.  The claims against the Union will be addressed separately.

## A.     Defendants National Dairy and Dairy Fresh

Melton claims disparate treatment as it relates to discipline (specifically including his termination and a number of write-ups), equipment assignments, and route assignments.  *See* Doc. 120, p. 70-77.[1]  He also claims National Dairy and Dairy Fresh failed to promote him despite his qualifications, but instead promoted a white female.  *Id*. at p. 72-73.  Finally, Melton claims that he was subjected to a racially hostile work environment.  *Id.* at p. 75-77. The Court will address each claim in turn.

### i.      Disparate Discharge / Wrongful Termination

Dairy Fresh terminated Melton on January 27, 2007 on grounds of dishonesty.  *See* Doc. 120 at p. 22 and p. 70.  The underlying allegations relating to the termination stem from a disputed allegation that Melton lied about sleeping in his car when he was on company time and supposed to be on his route.  *Id*. at p. 22-26 and p. 64-65.  Melton disputes that he was asleep and instead claims he was on his route.  *Id*.  Melton claims Dairy Fresh ignored evidence in his favor and instead believed other witnesses who claimed to see him sleeping. *Id*.  Finally, Melton asserts that his termination was discriminatory because white employees were not terminated for rule violations.  *Id*.

---

[1]       With regard to the use of page numbers in this opinion, the Court refers to the page numbers used on the docket printouts, not the numbers used by the parties at the bottom of the page of their respective pleadings.

### (A)   *Prima Facie* Case

Melton must meet four requirements to establish a prima facie case of discrimination for discharge based on a disparate application of disciplinary rules: (1) he is a member of a protected class; (2) he was qualified for the position or benefit sought; (3) he was subject to an adverse employment action; and (4) he suffered from a differential application of work or disciplinary rules. *Spivey v. Beverly Enters, Inc.*, 196 F.3d 1309, 1312 (11th Cir. 1999). There is no dispute that Melton meets elements 1 through 3. He is a member of a protected class, he was qualified for his position as a transport driver, and he was subject to an adverse action - i.e. termination. The only element at issue is whether he suffered from a differential application of work or disciplinary rules (element 4). As to element four, when the disparate treatment at issue is discipline for violation of work rules, the "plaintiff ... must show either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct." *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).

With respect to his termination, Melton claims he establishes his *prima facie* case in both ways - he did not violate any work rule and his conduct was identical to similarly situated white employees who were not terminated. *See* Doc. 120 at p. 72. The Court acknowledges that there appears to be a great deal of confusion in this area when a plaintiff claims he did not violate the work rule. Most courts ignore the first prong and turn to the

second - and more clearly established - rule pertaining to a similarly situated comparator. *Cf. Marshall v. Mayor and Alderman of City of Savannah, GA.*, 2010 WL 537852, *5 (11th Cir. Feb. 17, 2010) (unpublished) ("Not surprisingly, the district court made no factual finding as to whether Marshall had actually violated the City's rules and regulations. The court only analyzed Marshall's allegation that similarly situated male firefighters were treated differently than her."); *Smith v. Sunbelt Rentals, Inc.*, 2009 WL 4672443, *6 (11th Cir. Dec. 10, 2009) (unpublished) (The district court did not consider whether Smith did or did not violate Sunbelt's work-rule in March 2007 for the purposes of establishing a prima facie case."). However, under this prima facie formulation, it is not enough for a plaintiff merely to deny he committed the alleged infraction. *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 n. 6 (11th Cir. 1998), *modified on other grounds on denial of reh'rg*, 151 F.3d 1321 (11th Cir. 1998) ("We stress that ... no plaintiff can make out a prima facie case by showing just that [he] belongs to a protected class and that [he] did not violate [his] employer's work rule."). The *Bessemer* court further states that "[t]he plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better." *Id.*; *see also Foster v. Mid State Land & Timber Co., Inc.*, 2007 WL 3287325 (M.D. Ala. 2007) (citing and analyzing *Gerwens* and *Bessemer*). From this analysis and the clear command of *Bessemer*, the Court looks to whether Melton has identified a similarly situated person outside the protected class who was not terminated for alleged dishonesty.

As to the similarly situated requirement, a valid comparator requires an employee who is "similarly situated in all relevant aspects." *Holifield*, 115 F.3d at 1562.  For purposes of the prima facie showing, "[t]he most important factors in the disciplinary context are the nature of the offenses committed and the nature of the punishments imposed." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *accord Maynard v. Bd. of Regents of Div. Of Univs. of Fla. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (citation omitted). Moreover, when conducting the comparator analysis, a court must bear in mind that an employer may interpret its rules as it chooses and make determinations as it sees fit under those rules. *Maniccia*, 171 F.3d at 1369.  Melton has the burden to prove "that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions." *Id*. at 1368; *see also Greer v. Birmingham Beverage Co.*, 291 Fed. Appx. 943, 946 (11th Cir. 2008) (quoting *Maniccia*).  Consequently, when the plaintiff and the proposed comparator are not similarly situated, the employer's decision to impose a different punishment on each does not raise an inference of illegal discrimination. *See Latham v. Dep't of Children & Youth Servs.*, 172 F.3d 786, 793 (11th Cir. 1999).

Melton offers Wayne Brown as the similarly situated white employee who was treated differently. *See* Doc. 120 at p. 71.  Brown totaled his rig while on a run which violated Dairy Fresh rules.  Melton argues that it was only alleged that he broke the rules whereas Brown actually broke a rule.  Melton's argument fails for one primary reason.  When looking at the

alleged misconduct, Melton was accused of lying whereas Brown damaged equipment.  The

quantity and quality of the misconduct is not nearly identical as required.  Rather, the

misconduct is not similar at all.[2]  Melton appears to rely on the supposition that violation of

any work rule provides a comparator.  This is simply not the case.

Absent more, Melton fails to establish a *prima facie* case using the above analysis.

However, other ways exist to raise a presumption of discrimination.  For example, Melton

can bypass the "similarly situated" prongs, set out in *Jones supra*, by demonstrating instead

that he was replaced by someone outside his protected class.  *See Maynard*, 342 F.3d at 1289.

Therefore, he may raise a *prima facie* case by showing he "(1) was a member of a protected

class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was

replaced by someone outside the protected class." *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d

1230, 1235 (11th Cir. 2004); *see also Maynard*, 342 F.3d at 1289 (providing element four

of the analysis - "he was replaced by a person outside his protected class or was treated less

favorably than a similarly-situated individual outside his protected class").  As before,

elements one, two and three are met.  Melton does not raise the argument that his

replacement was a non-minority and it is not this Court's function to weed through the

---

[2]    In their Reply, Dairy Fresh and National Dairy address their belief that Melton
offered Parish as a white comparator because Melton stated "Parish was not charged with
stealing company time for sitting in his car for three hours waiting for his truck." *See* Doc. 120
at p. 30 for quote from Plaintiffs' Response; *see* Doc. 124 at p. 28 for Defendant's reply
argument.  In reviewing the full paragraph, it simply appears that the use of the name Parish
instead of Melton was a typographical error.  The Court does not view this as Melton presenting
Parish as a white comparator.  However, in the unlikely event that Melton is presenting this
argument, the Court rejects it.

voluminous summary judgment submissions in search of such an argument. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."); *Edwards v. Hyundai Motor Mfg. Alabama, LLC*, 2009 WL 1257164, at *3 (M.D. Ala. 2009) ("The court, in considering a summary-judgment motion, was under no obligation to comb hundreds of pages of depositions in search of evidence contradicting arguments made by the movants."); *see also* Doc. 36, Uniform Scheduling Order, § 2 ("In all briefs filed by any party relating to the motion, the discussion of the evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document. Failure to make such specific reference will result in the evidence not being considered by the court.").[3]

---

[3]      Plenty of Courts have held the same. *See Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) ("Rule 56 ... does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition."); *Lawson v. Sheriff of Tippecanoe County, Ind.*, 725 F.2d 1136, 1139 (7th Cir. 1984) ("The judge was not obliged to comb the record for evidence contradicting the defendant's affidavit"); *Karlozian v. Clovis Unified School District*, 8 Fed. Appx. 835, 2001 WL 488880 at *1 (9th Cir. 2001) ("While pretext evidence may have been buried in [the plaintiff's] 242 page deposition, a district court is not required to comb the record to find some reason to deny a motion for summary judgment."); *Preis v. Lexington Ins. Co.*, 508 F.Supp.2d 1061, 1068 (S.D. Ala. 2007) (stating that, "Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions. Accordingly, the Court's review of the parties' submissions is limited to the portions which they have specifically cited."); *Foster v. Mid State Land & Timber Co., Inc.*, 2007 WL 3287345 (M.D. Ala. 2007) ("It is not the court's function to weed through the summary judgment submissions in search of evidence to support [Plaintiff's] position."); *Freeman v. City of Riverdale*, 2007 WL 1129004, *6 (N.D. Ga. 2007) ("It is not the Court's responsibility to cull through the record in search of evidence.").

Based on the above, Melton also fails using this *prima facie* analysis.

### (B)    Legitimate, Nondiscriminatory Reason for Termination

Even if Melton had established a *prima facie* case of discrimination, Dairy Fresh and National Dairy present a legitimate, nondiscriminatory reason for the termination - i.e. Melton lied about sitting in his car for three hours while on the clock.  Violations of work rules constitute legitimate, nondiscriminatory reasons to terminate an employee.  *See Damon v. Fleming Supermarkets of Fla, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999); *see also Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)(holding an employee may be fired "for good reason, bad reason, reason based on erroneous facts, or no reason at all, so long as its action is not for a discriminatory reason").

### (C)    Pretext

As Dairy Fresh and National Dairy met their burden to produce competent evidence of legitimate, nondiscriminatory reasons to fire Melton, the burden shifts back to Melton to "meet [the preferred] reason head on and rebut it."  *Chapman v. AI Trans.*, 229 F.3d 1012, 1030 (11th Cir. 2000).  Further, he "cannot succeed by simply quarreling with the wisdom of that reason."  *Id.*  (citations omitted).  The pretext inquiry focuses on Defendants' perception of the facts available to him at the time of the decision, rather than on Melton's beliefs, *Holifield*, 115 F.3d at 1565, and on whether Defendants honestly believe that those facts violated the stated work rule.  *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1220 (10th Cir. 2007) ("A pretext argument requires the court to 'examine the facts as they appear to the

person making the decision,' to determine whether the employer honestly believed those reasons and acted in good faith upon those beliefs.") (citation and internal quotations omitted); *accord Jones*, 874 F.2d at 1540 ("The law is clear that, even if [plaintiff] did not, in fact, commit the violation with which he is charged, an employer successfully rebuts any prima facie case of disparate treatment by showing that it honestly believed the employee committed the violation.").  Moreover, "when the resulting employer's investigation . . . produces contradictory accounts of historical events, the employer can lawfully make a choice between the conflicting versions - that is, to accept one as true and to reject one as fictitious - at least, as long as the choice is an honest choice."  *E.E.O.C. v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000).

The law is well established that "[i]n order to avoid summary judgment, a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that each of the employer's proffered nondiscriminatory reasons is pretextual." *Chapman*, 229 F.3d at 1037. After review and careful consideration of the evidence, the Court finds that Melton has not shown that the reasons offered by Dairy Fresh and National Dairy are pretext for discrimination.  The Court cannot and will not second-guess the wisdom of an employer's decision.  Therefore, Melton fails to show a genuine issue of material fact regarding pretext and summary judgment on the wrongful termination claim is due to be granted.

### ii.    Disparate Discipline

Melton asserts that he was "disciplined over and over again for trivial matters when

white drivers did not receive such disciplines." *See* Doc. 120 at p. 73.  He lists eighteen

specific disciplinary actions over the course of his employment - the final one culminating

in his termination.  *Id*. at p. 23-28.  As his termination has already been addressed, the Court

will now address the remaining allegations of disparate discipline.

    **(A)**    ***Prima Facie case***

Melton must meet four requirements to establish a prima facie case of discrimination

with respect to his disparate discipline claim: (1) he is a member of a protected class; (2) he

was qualified for the position or benefit sought; (3) he was subject to an adverse employment

action; and (4) he suffered from a differential application of work or disciplinary rules.

*Spivey*, 196 F.3d at 1312.  Elements one and two are not at issue as Melton is a minority and

was qualified for his position as a transport driver.  As such, the only elements at issue are

whether he was subject to an adverse employment action and whether he suffered from a

different application of the rules.  The Court will first look at whether Melton was subject

to an adverse employment action.

"[N]ot all conduct by an employer negatively affecting an employee constitutes

adverse employment action" and to prove an adverse employment action "an employee must

show a serious and material change in the terms, conditions, or privileges of employment."

*Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001).  No bright-line test

exists for such an analysis, but it is clear that to support a claim "the employer's action must

impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable

way" and thus to prove an adverse employment action, a plaintiff "must show a *serious and material* change in the terms, conditions, and privileges of employment."  *Id*. at 1239 (emphasis in original).  Moreover, the employee's subjective view is not controlling.  *Id*.

The Court has previously addressed Melton's termination above and will now examine the lesser disciplinary actions he challenges.  Melton references a number of write ups as proof of discrimination.  *See* Doc. 120 at p. 23-28.  He further avers that "[h]e was disciplined over and over again for trivial matters when white drivers did not receive such disciplines" and "[his] work record is strewn with write-ups for trivial matters whereas white employees are not disciplined for much more serious matters."  *Id*. at p. 73-74.  A reprimand that has a meaningful adverse effect on an employee's working conditions may be cognizable.  *Keenan v. American Cast Iron Pipe Co.*, 707 F.2d 1274, 1277 (11th Cir. 1983).  However, a reprimand does not constitute an adverse employment action when the employee suffers no tangible harm as a result.  *Davis*, 245 F.3d at 1240-1241; *Wallace v. Ga. Dep't of Transp*., 212 Fed. Appx. 799, 801-02 (11th Cir. 2006); *Braswell v. Allen*, 586 F.Supp.2d 1297, 1306 (M.D. Ala. 2008).[4]

Melton presents no evidence that the reprimands/write-ups led to tangible harm in the form of loss of pay or benefits, or lost opportunity for a job promotion.  In fact, other than a conclusory statement that these write ups can be viewed as "creating a record as a precursor

---

[4]     The Court notes that the standard defining an adverse action in the context to a retaliation claim is different than the standard applying to a discrimination claim.  *See Wallace*, 212 Fed. Appx. at 801 (citations omitted).

to termination," Melton does nothing to show how most of these write ups had a material impact on his employment.  Specifically, he only identifies three write-ups which resulted in any action which could be construed to affect the terms, conditions, and privileges of employment - 3/20/05 Employee Termination Notice; 9/27/05 Employee Warning Notice; and 12/6/06 Employee Warning Notice.  *See* Doc. 120 at p. 23-28 and p. 73-75.  The Court will address these three separately after it addresses the remaining write-ups.[5]

Pursuant to the collective bargaining agreement, write-ups are void within six months which belies Melton's argument that they could be used as grounds for termination. Melton's reprimands span from 2005-2007.  Melton was terminated on February 1, 2007, so any written reprimands prior to August 1, 2006 are void.  Hence only the 12/6/06 Employee Warning Notice and the 2/1/07 Employee Warning Notice (which relates to the events surrounding his final termination) could form a basis for further action by Dairy Fresh.  No reasonable fact finder could find these write-ups affected his terms, conditions, and privileges of employment.  Therefore, as to these write ups, Melton fails to establish element three - an adverse action.

As to the 3/20/05 Employee Termination Notice, 9/28/05 Employee Warning Notice, 12/6/06 Employee Warning Notice, the Court will address each in turn.  The 3/20/05 notice resulted in Melton's first termination, which he challenged through the grievance process. *See* Doc. 120 at p. 24-25.  Specifically, it alleged that Melton parked his tractor and trailer

---

[5]        This excludes, of course, the 2/1/07 Employee Warning Notice pertaining to the events surrounding his termination.

at a residence.  *See* Doc. 97, Tab 9, Exhibit 37.  Melton was successful in his grievance and returned to work on May 13, 2005, but did not receive back pay for the time he was off work. As such, this would be an action that affected pay.  The 9/27/05 Employee Warning Notice and the 12/6/06 Employee Warning Notice each resulted in a 3 day suspension.  *See id*., Tab 9, Exhibits 43 and 55.  The 9/27/05 Notice was because of damage to the window of his truck.  The 12/6/06 Notice stated that Melton failed to take cans of dump milk off the trailer, did not fuel his truck, and did not check his water levels.  Both resulted in suspensions, thus they could reasonably be considered actions that affected pay.  *See Braswell*, 586 F.Supp.2d at 1306 (loss of pay is a tangible harm).  As such, the Court determines that Melton meets the requirement of an adverse action (element 3) and moves to element 4 (different application of work or disciplinary rules).

As already discussed in the section pertaining to his termination, Melton must show either "(a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct."  *Jones*, 874 F.2d at 1540.  Melton's response to the summary judgment in this respect is minimal, at best.  In his response, Melton does not argue that he did not violate the rules, so the Court will not address it specifically here.  Rather, Melton appears to acknowledge at least some of the violations.  Specifically, Melton states (1) his rig was parked at a residence when he had a legitimate reason for doing so (3/20/05 Notice), (2)

having small damage to his truck when Wayne Brown totaled his truck with no discipline given (9/27/05 Notice), and (3) not fueling his truck when white drivers are not written up for the same conduct (12/6/06 Notice).  The Court cannot conclude that Melton satisfies the *prima facie* requirement by showing he did not violate the rules.  Further, even if he did, Melton must identify a similarly situated person outside the protected class who was not disciplined for those same infractions.  *See Bessemer*, 137 F.3d at 1311 n. 6.  In other words, he would still need a valid comparator "similarly situated in all relevant aspects."  *Holifield*, 115 F.3d at 1562.

As to the 3/20/05 infraction of parking in front of a residence, Melton provides absolutely no argument of a similarly-situated employee.  *See* Doc. 120 at 74.  For the 9/27/05 notice, Melton provides Wayne Brown as his comparator.  *Id*.  Finally, for the 12/6/06 notice, Melton again makes a conclusory statement with no specifics that white drivers are not written up for the same conduct.  Again, it is not this Court's job to cull through the voluminous record in this case for specific examples and Plaintiff gave no pin point cites to identify relevant matters for the Court.  Therefore, the Court will only address the 9/27/05 Notice relating to damage and the assertion of Wayne Brown as a similarly-situated employee.  Wayne Brown, a white driver, received no discipline when he totaled his vehicle.  Dairy Fresh and National Dairy acknowledge that Brown was not disciplined, but aver it was only because the supervisor failed to complete the write-up within the five-day window as required under the collective bargaining agreement.  *See* Doc. 124 at p. 17.

Though Defendants gave a rationale to explain their failure to write up Brown, for the purposes of this analysis, Melton has met his burden to produce a similarly situated white employee who was not written up for damage to his truck.[6] Ergo, Melton raises an inference of discrimination by establishing a *prima facie* case with regard to the 9/27/05 write-up.

### (B)    Legitimate, Nondiscriminatory Reason for Discipline

Since Melton has established a *prima facie* case of discrimination, Dairy Fresh and National Dairy must present a legitimate, nondiscriminatory reason for their actions. Damage to a vehicle is a violation of a work rule which can merit a write-up and Melton does not dispute there was damage to his truck. *See* Doc. 97, Tab 9, Melton Depo 210:13-15. Therefore, National Diary and Dairy Fresh were entitled to write him up. Here, the Court is presented with a somewhat unusual circumstance. Defendants' legitimate, nondiscriminatory reason for their actions do not pertain solely to the write-up for Melton. Rather, they already established they could write Melton up for the damage to his vehicle, but also that the failure to write-up Brown was an error because Onorato, the supervisor, failed to complete the write-up within the five day window as required by the collective bargaining agreement. *See* Doc. 124 at p. 17; Doc. 98, Tab 18, Onorato Depo. 78:2-23, 87:13-90:10.   On this basis, Defendants meet their "exceedingly light" burden of articulating legitimate, nondiscriminatory reasons for their employment actions. *See, e.g., Holifield*, 115 F.3d at 1564 (quoting *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994)) ("This

---

[6]    The Court does not choose to compare in great detail the level of damage to the trucks, but does note that Brown's damage was more severe than Melton's.

intermediate burden is 'exceedingly light.'").

**(C)    Pretext**

As National Dairy and Dairy Fresh articulate legitimate, nondiscriminatory reasons for their decisions, Melton must receive an opportunity to demonstrate that the proferred reasons are pretextual.  Melton fails at this prong of the *McDonnell-Douglas* analysis.  "[A] reason is not pretext for discrimination 'unless it is shown *both* that the reason was false, and that discrimination was the real reason.'" *Springer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006)) (emphasis in original).  Melton does nothing to show pretext in the proferred reason that the failure to write-up Brown was racially motivated instead of based on an error.[7]  Therefore, Melton fails to show a genuine issue of material fact regarding pretext and summary judgment on the disparate discipline claim is due to be granted.

**iii.    Failure to Promote**

Melton applied for the position of vacation relief driver in 2006, but was told he did not qualify for the position.  *See* Doc. 120 at p. 22 and 72-73.  Melton disputes that he was

---

[7]        Defendants, in their reply brief, discuss that Plaintiffs assert the failure to write-up Brown was because he was over the seventy hour limited mandated by DOT rules.  *See* Doc. 124 at 17.  The Court understands why Defendants chose to address this, since Plaintiffs filed a comprehensive joint response.  However, the Court declines to apply this supposition as Melton's argument since the Plaintiffs' response brief specifically says Hobbs believes this.  *Id.* Nothing on those pages of Plaintiffs' response brief specifically applies this belief to Melton.  However, even if it were, the argument fails because it is not a racially motivated reason.

not qualified and asserts racial discrimination because a white female with less experience, Aimee Vaughn received the position. *Id.*

### (A)   *Prima Facie* **Case**

For a failure to promote claim, Melton must first establish a prima facie case by showing: (1) he was a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected despite his qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. *Brown*, — F.3d at — , 2010 WL 605582 at *7 (citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004)). The comparators for the fourth prong must be "similarly situated in all relevant aspects. *Id.* (citing *Holifield*, 115 F.3d at 1562). Before the Court considers the failure to promote claim, the Court must return to the generic *McDonnell Douglas* framework, specifically the element that requires an adverse employment action. To be considered an adverse employment action, it must result in a serious and material change in the terms, conditions, or privileges of employment. *Davis*, 245 F.3d at 1239. A purely lateral transfer – i.e. a transfer that does not involve a demotion in form or substance – does not rise to the level of an adverse employment action. *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998). "A transfer to a different position can be adverse if it involves reduction in pay, prestige, or responsibility." *Gaddis v. Russell Corp.*, 242 F.Supp.2d 1125, 1145 (M.D. Ala. 2003) (quoting *Smith v. Ala. Dept. of Corrs.*, 145 F.Supp.2d 1291, 1298 (M.D. Ala. 2001)). "The flip side of this coin would appear to be that

a failure to transfer may constitute an adverse employment action if [the new position] entails an increase in pay, prestige or responsibility." *Id.* (quoting *Morris v. Wallace Cmty. Coll.*, 125 F.Supp.2d 1315, 1328 (S.D. Ala. 2001)).

The parties differ in opinion as to whether the position of vacation relief driver constitutes a promotion. Defendants note that the rate of pay is the same - $13.83 per hour. *See* Doc. 101 at p. 38. As additional support, Defendants cite to the Parish deposition and the Onorato declaration wherein Defendants' employees state the position is not a promotion in the transport department. *Id.* Melton acknowledges that there is no pay difference, but says that the position includes the potential for more hours. *See* Doc. 97, Tab 9, Melton Depo at 129. A jury could find that the vacation relief position held out the possibility for extra pay. *See Rowlin v. Ala. Dep't of Pub. Safety*, 2001 WL 630581, *8 (M.D. Ala. 2001); *see also Smith*, 145 F.Supp.2d at 1298 (citing *Rowlin*).[8] Therefore, the Court will move to the specific elements of a *prima facie* case for failure to promote.

Element one is not at issue because Melton, as an African American, is a member of a protected class. Element three is also not at issue as Melton did not receive the position. Elements two and four remain at issue - specifically whether Melton was qualified for the vacation relief driver position and whether an equally or less qualified person outside the protected class received the position.

---

[8]    Conversely, in their reply brief, Defendants argue that the route could result in *less* hours. *See* Doc. 124 at p. 14. However, this does not change the material facts before this court which include the potential for more hours. Therefore, for the purposes of this analysis there is a factual issue as to whether this would constitute a promotion.

Melton asserts that he was fully qualified for the position and disputes that he was banned from delivery by two customers - Wal-Mart and Fort Benning.  *See* Doc. 120 at p. 73.  Melton further asserts that the note submitted by National Dairy and Dairy Fresh is not credible evidence to show that he was banned by the two customers.  The Court agrees that the note, without more, is not sufficiently credible.  What Melton fails to consider is that his co-Plaintiff also recalls that Melton was banned from two customers during the relevant time period.  *See* Doc. 125 at p. 15 (citing Cody Depo 232: 1-7).  Melton does little to show that Aimee Vaughn, the white female who received the position, was less qualified other than to state she had less seniority.  However, the Court will assume for the purposes of this analysis that Melton is able to establish a *prima facie* case.

### (B)    Legitimate, nondiscriminatory reason

Though the Court assumes for the purposes of this analysis that Melton was able to show a *prima facie* case of discrimination, Dairy Fresh and National Dairy still present a legitimate, nondiscriminatory reason for choosing Aimee Vaughn over Melton.  Specifically, Aimee Vaughn had not been banned from any routes at the time of their applications ergo she was the more qualified applicant.  Thus, National Dairy and Dairy Fresh have met their burden to articulate a legitimate, nondiscriminatory reason for selecting Vaughn over Melton. Under the *McDonnell Douglas* framework, the burden then shifts back to Melton to show that the articulated reason is pretext.

### (C)   Pretext

Again, Melton may demonstrate that Defendants' reasons were pretextual by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendants'] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer*, 509 F.3d at 1348-49 (citations omitted).  A reason is not pretext for discrimination "unless it is shown both that the reason was false, and that discrimination was the real reason." *Id*. at 1349 (citations omitted).  In the context of a promotion, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the person who received the position he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." *Id*. (quoting *Brooks*, 446 F.3d at 1163).  Finally, "a plaintiff must show that the disparities between the successful applicant's and his own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Id*. (quoting *Cooper*, 390 F.3d at 732; *see also Ash v. Tyson Foods, Inc*., 546 U.S. 454, 126 S.Ct. 1195, 1197, 163 L.Ed.2d 1053 (2006) (approving of this language from Cooper); *Bennett v. Chatham County Sheriff Dep't.*, 315 Fed. Appx. 152 (11th Cir. 2008) (quoting *Springer*).

Melton fails to show that Vaughn was significantly less qualified, especially in light of the proferred reason that he was banned from two routes.  While Melton denies he was banned, the record does not support his argument that he was better qualified than Vaughn.

Even his co-Plaintiff remembers that he had been banned and therefore Melton fails to show pretext as to Vaughn's selection - or more accurately Melton's nonselection - being racially motivated.

Melton also points to Wayne Brown as another comparator because Brown was permitted to keep his position as a relief driver despite being banned from delivery to Wal-Mart. *See* Doc. 120 at p. 73. Defendants aptly note in their reply brief that Brown is not a valid comparator because Brown was banned after he had acquired and maintained the position of vacation relief driver. *See* Doc. 124 at p. 16; *see also* Doc. 120 at p. 73 (Plaintiff implicitly acknowledges this difference when stating Brown was able to *keep* his position despite being banned). More specifically, at the time of his application (which appears from the record to be at a different time than Melton and Vaughn's application), Brown was fully qualified for the vacation relief driver position. *Cf. Brown*, — F.3d at — , 2010 WL 605582 at *12 (quoting *Chappell-Johnson v. Powell*, 440 F.3d 484, 488 (D.C. Cir. 2006) ("In a failure to promote case, the plaintiff must show that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied."). The fact that National Dairy and Dairy Fresh made accommodations after Brown was banned play no role in the analysis of whether Melton was more qualified for the position than Vaughn. Therefore, summary judgment is due to be granted as to the failure to promote claim.

### iv.     Disparate Treatment in Job Assignments and Equipment

Melton avers that he was assigned to longer routes and worse trucks than white drivers.  *See* Doc. 120 at p. 77.  Specifically, this made his job more arduous than the that of the white drivers because he had to carry each crate separately instead of using a pallet hand truck.  *Id*.  He further claims that though the Maxwell route was a longer route, he was still not assigned a better truck.  *Id*. at p. 21.

"A plaintiff establishes a *prima facie* case of disparate treatment by showing that [he] was a qualified member of a protected class and was subjected to an adverse employment action in contrast with similarly situated employees outside the protected class."  *Cooley v. Great Souther Wood Preserving*, 128 Fed. Appx. 149, 157 (11th Cir. 2005) (quoting *Wilson*, 376 F.3d at 1087) (stating same four elements as a sentence instead of numerically).  As to the *prima facie* case of discrimination, Melton is a member of a protected class (element 1) and was qualified for his job as transport driver (element 3).  Thus, the only elements left to review are whether he was subjected to an adverse employment action and was treated differently than a similarly situated comparator outside the protected class.

For element 2, Melton must show he experienced an adverse employment action with regard to the assignment of routes and equipment.  Consequently, there must be a serious and material change in the terms, conditions, or privileges of employment.  *Davis*, 245 F.3d at 1239.  While Melton asserts that his truck assignments changed "the 'terms and conditions' of his employment," he does little to elaborate.  *See* Doc. 120 at p. 77.  While there might be

instances where a truck assignment might approach a material change in the terms, conditions and privileges of employment, in this case the Court does not believe it rises to such a level. *See, e.g. Tinkle v. Oklahoma Gas & Elec. Co.*, 16 Fed. Appx. 815, 817 (10th Cir. 2001) (Employer's refusal of plaintiff's requested truck assignment did not rise to the level of an adverse employment action.); *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, *6 (N.D. Tex 2008) (truck assignments do not constitute an adverse employment action); *Horn v. Southern Union Co.*, 2008 WL 2466696, *9 (D.R.I. 2008) (Assignment of disfavored vehicle is not an adverse action); *Hamilton v. Century Concrete, Inc.*, 2007 WL 2010938, *6 (D. Kan. 2007) (Plaintiff did not show that his failure to receive a new, air-conditioned truck significantly changed his benefits or went beyond a mere inconvenience.).

But even if Melton were able to show that truck assignments might constitute an adverse employment action, he still cannot establish a *prima facie* case because he fails to offer a comparator (element 4). While he generically asserts that white drivers received better/newer trucks, Melton fails to provide with any specificity a white comparator who received better equipment and routes.[9] Without a sufficient comparator, Melton does not establish a *prima facie* case of disparate treatment. Moreover, even if he had established a prima facie case, National Dairy and Dairy Fresh offer a legitimate nondiscriminatory

---

[9] As the Court has already addressed Melton's claim for failure to promote to the position of Vacation Relief driver. Beyond that position, Melton does little to assert that he had a more difficult route. The only route he complains about specifically is the Maxwell Commissary route which was his first assignment and therefore assigned due to a lack of seniority. *See* Doc. 120 at p. 21.

explanation for the assignment of trucks.  Specifically, that the trucks are assigned to the route, not the driver.  *See* Doc. 101 at p. 22.  As a result, summary judgment must issue.

### v.   Hostile Work Environment

"A plaintiff may have a viable hostile environment claim, even if the racial remarks were not directed at h[im]."  *Edwards v. Wallace Cmty College*, 49 F.3d 1517, 1522 (11th Cir. 1995) (citing *Busby v. City of Orlando*, 931 F.2d 764, 785 (11th Cir. 1991)).  As such, the Court will hold off on Melton's claim for a racially hostile work environment and address it concurrently with the other Plaintiffs later in this opinion.

## B.   Defendant Teamsters Local 991

Melton asserts claims that he suffered disparate treatment from the Union during his termination because the Union failed to adequately represent his interests by (1) not representing Melton during arbitration, (2) ignoring its own investigation of the facts, and (3) ignoring help proferred by Melton's attorneys.  *See* Doc. 120 at p. 77.  He further states that the Union discriminated against him because Clinton Hobbs did not press grievances against various write-ups.  *Id*. at p. 77-78.

The Supreme Court has held that a labor union may be subject to liability under § 1981 for racial discrimination if its conduct impairs an employee's ability to enforce his established contract rights through legal process.  *See Patterson v. McLean Credit Union*, 491 U.S. 164, 177-78, 109 S.Ct. 2363, 2373, 105 L.Ed.2d 132 (1989) (stating that "certain private entities such as labor unions, which bear explicit responsibilities to process

grievances, press claims, and represent member in disputes over the terms of binding obligations that run from the employer to the employee, are subject to liability under § 1981 for racial discrimination in the enforcement of labor contracts."); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987) ("A union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or in deference to the perceived desires of its white membership, is liable under [Title VII].").

As with the other claims of discrimination, the Court begins with the *McDonnell-Douglas* analysis. *See Eliserio v. United Steelworkers of Am. Local 310*, 398 F.3d 1071, 1076 (8th Cir. 2005) (applying McDonnell Douglas standard to § 1981 claims asserted against a union); *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 402-03 (6th Cir. 1999) (same); *Stalcup v. Commc'n Workers of Am.*, 44 Fed. Appx. 654 (5th Cir. 2002) (same); *Burns v. I.L.A. Local 1414*, 2009 WL 840193 (S.D. Ga. 2009). Therefore, Melton must show that he was a member of a protected class, subjected to an adverse union action, and treated less favorably than others outside the protected class.[10] Melton clearly establishes the first two prongs as he is a minority and subjected to an adverse union action -

_____

[10]    Whether the plaintiff is qualified for the job is irrelevant in this case because Melton asserts discrimination in the context of the grievance process. He is entitled to a nondiscriminatory grievance process regardless of job qualifications. Rather, this is more like a benefit sought in that he is entitled to a nondiscriminatory grievance process regardless of job qualifications. The Court finds it conceivable that there may be some claims of union representation which would require a showing of qualification for a *prima facie* case. However, as that is not the case with the instant claims asserted by Melton, the Court will address the relevant three elements.

i.e. the union did not arbitrate his second termination case.  However, in spite of his assertions, Melton has adduced no facts showing that the Union's refusal to pursue arbitration or press grievances was based on race.  *See Wallace v. Teledyne Continental Motors*, 138 Fed. Appx. 139, 144-45 (11th Cir. 2005); *see also Evers v. Gen. Motor Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) (In opposing summary judgment "[t]his Court has consistently held that conclusory allegations without specific supporting facts have no probative value.").  Melton focuses on the Union's failure to take certain actions - i.e. pursue certain grievances, refused to arbitrate, did not contact Melton's witnesses and his arbitration - but never establishes a racial nexus in its actions.  Moreover, a union has no affirmative duty to investigate and take steps to remedy alleged employer discrimination, but can only be held liable if the union itself instigated or actively supported the discriminatory acts. *Eliserio*, 398 F.3d at 1076-77.  As such, Melton's claims against the Union fail and summary judgment should be granted.

## VIII.  J.T. BROOKS

### A.    National Dairy & Dairy Fresh

Brooks asserts claims for disparate treatment in schedule assignments, training, hours assigned, discipline as well as a claim for a hostile work environment.

#### i.    Disparate Treatment in Schedule & Route Assignments

To establish a *prima facie* case of disparate treatment, Brooks must show that he was a member of a protected class, subjected to an adverse employment action, treated differently

than similarly situated employees outside the protected class, and qualified for the job or benefit at issue. *Gillis v. Ga. Dep't of Corrs.*, 400 F.3d 883, 887 (11th Cir. 2005). Brooks complains that National Dairy and Dairy Fresh changed his schedule which resulted in him having to drive on Saturdays. To prove an adverse employment action, he must show "a *serious and material* change in the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1239. Thus, conduct that falls short of an ultimate employment decision must meet "some threshold level of sustainability" in order to be actionable. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). The standard for measuring the adversity of a particular action is an objective one: "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis*, 245 F.3d at 1239.

Changes in work assignments that do not cause any economic injury to the employee do not constitute adverse employment action. *Id*. at 1240. Brooks does not allege that the route change resulted in a change in salary or benefits and as such, does not constitute an adverse action for the purposes of a *prima facie* case of discrimination. *See, e.g. Grube v. Lau Indus., Inc*., 257 F.3d 723, 728 (7th Cir. 2001) (change in working hours unaccompanied by a reduction in pay or significantly diminished job responsibilities is not adverse); *Benningfield v. City of Houston*, 157 F.3d 369, 377 (5th Cir. 1998) (explaining that where plaintiff complained of transfer to night shift, "[m]erely changing [plaintiff's] hours, without

more, does not constitute an adverse employment action"); *see also Dixon v. Palm Beach County Parks & Recreation Dep't.*, 343 Fed. Appx. 500, 502 (11th Cir. 2009) (citations omitted) (denial of request for Sundays off did not constitute adverse employment action).

Even if the changed route schedule constituted an adverse employment action, Brooks still fails to establish a *prima facie* case because he has not shown that similarly situated employees outside his class were treated more favorably.[11] As a result, Brooks cannot sustain his disparate treatment claim for route and schedule assignments.

### ii.    Disparate Treatment in Training

Brooks asserts he "was not trained as other white drivers were trained." *See* Doc. 120 at p. 37.  He states this lack of training caused him to experience "a much longer learning curve to establish himself on the job than was usual." *Id*. at p. 79.  Brooks specifically cites to portions of the record which show he was assigned a black contract driver to train him on how to do his route and that he was not given a road test when hired.  *See* Doc. 120 at p. 37 and p. 79 (citing portions of Brooks' deposition).  Brooks does nothing to show how this fits into the *prima facie* framework of the *McDonnell Douglas* analysis.  There is no argument or evidence (beyond conclusory assertions) that either of these actions were adverse employment actions or how he was treated differently than similarly situated white

---

[11]    Brooks makes no reference to cut hours in his analysis section and instead only addresses the route/schedule change.  In his "record evidence" section Brooks makes vague references to others receiving more hours, but does nothing to show how they were similarly situated.  He simply throws out names and does nothing to put them into context other than saying they got more hours, weren't hassled, and are white.  *See* Doc. 120 at p. 39.

employees.  Further, Brooks does nothing to counter Defendants' statements there is "no additional compensation or employment benefit provided to an employee for completing the road test."  *See* Doc. 101 at p. 28.  Therefore, Brooks fails to establish a *prima facie* case of discrimination as to training.

### iii.    Disparate Treatment in Discipline

Brooks asserts he was disciplined differently than whites when (1) he was wrongfully terminated because of erroneous attendance records while he recovered from a motorcycle accident, (2) was denied leave when he had a motorcycle accident, (3) was not permitted to perform light duty during his recovery, (4) was disciplined for use of a cell phone.  *See* Doc. 120 at p. 37-38 and p. 80-82.

To begin the *McDonnell Douglas* analysis, Brooks must show (1) he is a member of a protected class; (2) he was qualified for the position or benefit sought; (3) he was subject to an adverse employment action; and (4) he suffered from a differential application of work or disciplinary rules.  *Spivey*, 196 F.3d at 1312.  The first three claims all relate to Brooks' motorcycle accident and so the Court will address them concurrently.  The Court will then address the discipline as to the cell phone.

### (A)    Denial of Leave and Denial of Light Duty Resulting in Wrongful Application of Attendance Points

Element 1 is not at issue.  Defendants clearly contest elements two and four.  It is unclear whether Defendants dispute element three; however, because Brooks was denied the leave, light duty, and terminated (though re-instated) - all of which affected his pay - the

Court determines that Brooks meets element three.  Therefore, the Court will look to whether he was qualified for the benefit sought and others similarly situated but outside the protected class received that benefit.

Functionally, these complaints are intertwined as they all relate to the time after Brooks' motorcycle accident in July 2007.  After the accident, Brooks asked for leave because he needed to recover from his injuries.  *See* Doc. 120 at p. 38.  Once his leave request was denied, he asked for a light duty assignment which was also denied.  *Id*.  As a result of these denials and the time it took to issue them, Brooks accrued attendance points which eventually resulted in his termination.  *Id*.  Defendants assert that Brooks was not entitled to medical leave or light duty because his injury did not occur on the job and he was not yet entitled to FMLA leave since he had been employed for less than a year.  *See* Doc. 101 at p. 59.  Brooks does not make any argument to counter those assertions and the Court finds that based on the facts presented, Brooks was not entitled to medical leave.  As for light duty, the Court finds there is a question as to whether Brooks was entitled to a light duty assignment and therefore, moves onto element four - whether Brooks was treated differently than similarly situated white employees.

Brooks states Danny McDuffie[12] and Vicki Alexander are two white employees who were permitted to perform light duty when recovering from their injuries.  *See* Doc. 120 at

_____

[12]    At times this person is referred to as McDuffle and at other times McDuffie.  A review of the record indicates that it is most likely McDuffie and therefore the Court will use that spelling.

p. 38 and p. 81; *see also* Doc. 95, Tab 3, Brooks Depo, 157:20-158:8; 165:13-166:19.

Defendants aver that McDuffie and Alexander are not valid comparators because they are not similarly situated. *See* Doc. 101 at p. 60-61; Doc. 124 at p. 37-38. Brooks argues that "[i]t is a red herring to argue that McDuffie and Alexander were not similarly situated as to Brooks because McDuffie had a workers' comp accident and Vicki Alexander had been working the office part-time, as Dairy Fresh suggests. Dairy Fresh had all the authority it needed to treat Brooks the same as it was treating its white employees in regard to light duty assignments when he was recovering from his injury." *See* Doc. 120 at p. 81. The Court disagrees with Brooks' unsupported assumption. Brooks must show a comparator "similarly situated in all relevant aspects." *Holifield*, 115 F.3d at 1562. The relevant aspects here are an employee with less than a year of employment who was injured off the job.

With regard to Alexander, she had been employed by Dairy Fresh since 1994 which was well over a year when she was injured off the job in 2002. *See* Doc. 100, Tab. 24, Onorato Dec. ¶ 28. In addition, she had already been performing administrative duties at the time of her injury and such duties were not created to accommodate her off the job injury. *Id*. With regard to McDuffie, he was injured in the course of his employment covered by worker's compensation and as a result, he was assigned light duty work. *Id.*; *see also* Doc. 95, Tab 3, at 157:20-159:12. McDuffie had also been employed with the company for more than a year. *Id*. Consequently, Alexander and McDuffie are not similarly situated comparators to Brooks, despite his unsupported protestations otherwise.

Finally, even if Brooks were able to establish a *prima facie* case - which he is not - he still does not show that Dairy Fresh and National Dairy's reasons for their actions are pretext and thus, his claims for disparate treatment as to denial of leave and light duty (both of which resulted in the wrongful accrual attendance points) fail as a matter of law.

### (B)    Cell Phone Write-Up

The claims pertaining to the cell-phone write-up are confusing.  In the Amended Complaint, Brooks complains that he was written up on April 25, 2007 for carrying a personal cell phone and he alleges the write-up was discriminatory.  *See* Doc. 51 at ¶ 227-230.  In the response to the summary judgment motions, Brooks states that he felt the write up was retaliation for complaining about the changed route schedules instead of trying to understand the problem.  *See* Doc. 120 at p. 39 and p. 81.  Further, Brooks admitted that he did not think the write-up was racially motived.  *See* Doc. 95, Tab 3, Brooks Depo at 214:18-215:16.  In an apparent effort to salvage the claim Brooks argues that the write-up was retaliation for his complaints about the schedule changes which he contends were racially motivated.   *Id*. at 215:3-7.   To the extent Brooks still tries to maintain a § 1981 *discrimination claim* as to the cell phone write up, the Court rejects such a claim since Brooks said on the record that he does not believe the write-up itself was racially motivated. Even so, the Court must determine whether he can sustain a § 1981 retaliation claim.

The United States Supreme Court recently held that § 1981 does encompass claims of retaliation. *See CBOCS West, Inc. v. Humphries*, 553 U.S. 442, — , 128 S.Ct. 1951, 1961,

170 L.Ed.2d 864 (2008) (holding that § 1981 encompasses claims of retaliation without discussing the elements of such claims.).  The Eleventh Circuit has determined that when analyzing claims for race-based retaliation brought under § 1981, court should employ the tripartite analytical framework from *McDonnell Douglas*.  *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009), *cert. denied*, — S.Ct. — , 2010 WL 596591 (Feb. 22, 2010); *see also Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (Pre-*Humphries* case holding that the elements of retaliation claims under Title VII and § 1981 are the same.).

To establish a claim of retaliation under § 1981, a plaintiff must prove that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) he established a causal link between the protected activity and the adverse action. *Bryant*, 575 F.3d at 1307-08 (citing *Raney v. Vinson Guard Serv. Inc*., 120 F.3d 1192, 1196 (11th Cir. 1997); Goldsmith, 996 F.2d at 1163).  Once a plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for the adverse employment action.  *Id*. at 1308 (citing *Goldsmith*, 996 F.2d at 1163).  After the defendant makes this showing, the plaintiff has a full and fair opportunity to demonstrate that the defendant's proffered reason was merely a pretext to mask discriminatory actions.  *Id*. (citing *Raney*, 120 F.3d at 1196).

Neither Brooks, National Dairy, or Dairy Fresh address the claim using this analysis. National Dairy and Dairy Fresh rest their argument on the fact Brooks conceded the write-up

itself was not racially motivated, but fail to discuss in their reply that Brooks asserts in his response that the write-up was in retaliation for prior complaints about the race discrimination in schedule and route assignments.[13]  Though the Court has rejected Brooks' complaints of disparate treatment route and scheduling assignments, the Court specifically notes that in order to engage in protected activity, the underlying act complained of need not, in fact, violate § 1981; but rather, the employee merely needs to have a reasonable belief that the employer has engaged in unlawful employment practices.  *See Anderson v. Dunbar Armored, Inc.*, — F.Supp.2d — , 2009 WL 2568062, *31 (N.D. Ga. 2009) (citing *Webb v. R&B Holding Co., Inc.*, 992 F.Supp. 1382, 1389 (S.D. Fla. 1998)).  As neither the Defendants' brief nor the Plaintiff's brief is very useful on this matter, the Court first turns to the Amended Complaint itself.  *See* Doc. 51

The Amended Complaint contains a statement of facts and claims.  Paragraphs 220 through 276 of the Amended Complaint relate specifically to Brooks.  *Id*. at ¶¶ 220-276.  The incident with the cell phone is referenced in paragraphs 227 through 230.  *Id*. at ¶¶ 227-230. The word "retaliation" is not specifically mentioned within those paragraphs.  *Id*.  However, the Court cannot stop with the statement of facts.  Starting at paragraph 227, Plaintiffs assert claims for "§ 1981 Violations of Racial Harassment, Discrimination & Retaliation." and "re-allege and incorporate by reference paragraphs 1 through 276 above with the same force and

---

[13]     The Court notes that racial animus and intent to discriminate are not synonymous. *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 472-73 (11th Cir. 1999).  Ill will, enmity, or hostility are not prerequisites of intentional discrimination.  *Id*. at 473 n. 7.

effect as if fully set out in specific detail herein below." *Id*. at p. 35 ("Count One") and ¶

227.   Further, paragraph 279 states "[a]s set out in detail above, in retaliation for the

Plaintiffs' good faith opposition to racial harassment and racial discrimination, the

Defendants took adverse employment actions against them, including but not limited to,

being treated in a demeaning and discriminatory manner; having their hours cut and/or their

schedules changed; not being considered for promotions and/or management positions; being

disciplined for the same or similar actions for which white employees were not disciplined;

being falsely accused of stealing time; and for Plaintiffs Melton, Amos and Brooks being

discriminatorily suspended and/or terminated; and affecting other terms, conditions, and

benefits of their employment, as set out in detail above. *Id*. at ¶ 279.   Several other

paragraphs reference retaliation though the Court finds no specific reference to a cell phone

here. *Id*. at ¶¶ 282-283, 286-288.  A § 1981 complaint need not allege facts specific to make

out a prima facie case, just enough factual matter to suggest retaliation. *Davis v. Coca-Cola

Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (stating same as to a Title VII

complaint for retaliation); *see also Marshall v. Mayor and Alderman of City of Savannah,

Ga.*, 2010 WL 537852 (11th Cir. 2010) (quoting *Davis*).  However, the Amended Complaint

makes no link between the cell phone write-up and retaliation.  In fact, it is fairly specific

when discussing the cell phone complaints.  Specifically Brooks states that "white drivers

were carrying, and continue to be allowed to carry, and use their personal cell phones while

running their routes and they are not disciplined" and that he "informed his Supervisor that

he felt the write up was unjust and discriminatory." *See* Doc. 51 at ¶¶ 228-229; *see also id.* at ¶ 230 ("Supervisor's unprofessional and discriminatory actions"). Thus, the Court cannot conclude that Brooks properly asserted a retaliation claim in connection with the cell phone write-up. Rather, from the face of the Amended Complaint, it seems clear that the cell phone write-up allegations pertain solely to a disparate discipline discrimination claim. Moreover, Brooks, in his response to the motion for summary judgment, uses a disparate treatment analysis, further demonstrating to this Court that it is really a disparate discipline claim and not a § 1981 claim for retaliation.   Based on all the above, the Court finds that the Amended Complaint did not present a claim for retaliation as to the cell phone write-up.[14] Alternatively, the Court finds the claim meritless as there is a lack of a causal connection between the cell phone write-up and Brooks' alleged complaints of race discrimination.

### iv.    Hostile Work Environment

As with Melton, the Court will address this claim later in the opinion.

## B.    Teamsters Local 991

In his response to summary judgment, Brooks does nothing to address any claims he asserts against the Union.  In fact, his response to the summary judgment motions deals exclusively with his claims against Dairy Fresh and National Dairy.  As such, to the extent Brooks had asserted claims against the Union, those claims have been abandoned. *Supra,*

---

[14]    Plaintiff "may not amend [his] complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *accord Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006); *Mahgoub v. Miami Dade Cmty Coll.*, 2006 WL 952278, *2 (11th Cir. 2006).

*Resolution Trust Corp.*, 43 F.3d at 599 (citations omitted) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Robinson*, 242 F.Supp.2d at 1075(Where Plaintiff's opposition to motion for summary judgment addresses only some claims, the remainder were deemed abandoned).

## IX.  LARRY AMOS

As noted above, when a plaintiff's opposition for summary judgment fails to address claims, those claims may be deemed abandoned.  Therefore, the Court determines Amos has abandoned his claims for unlawful discharge, three denied job positions, a negative job reference, retaliation, and all but one claim of disparate discipline.

### A.    National Dairy and Dairy Fresh

The Court looks to the claims against National Dairy and Dairy Fresh including disparate discipline, disparate treatment as to assignment of equipment and schedules, failure to protect his property, failure to recognize him as a union steward, and hostile work environment.  *See* Doc. 120 at p. 83-86.

#### i.    Disparate Discipline

Amos claims that he and Plaintiff Harvey were disciplined differently than white drivers because they received a write-up for being "off route" on April 13, 2006.  *See* Doc. 120 at p. 19-20, p. 45-47, and p. 83-84.  Specifically, Amos and Harvey were parked at Northside Mall during their lunch break.  Each aggregated their breaks to have longer than

the normal 30 minute lunch break.  *Id*.  Onorato wrote them up after he received a call from an employee of Davis Theaters.  *Id*. at p. 19 and p. 46.  Amos asserts the write up itself was discriminatory because whites who were "off route" were not written up.  *Id*. at p. 47 and p. 83-84.  He further asserts that the write up was double discipline because Onorato first gave him an oral warning.  *Id*.  Finally, he claims it was discriminatory because others who received write ups for being off route did not have it state that the next violation would result in discharge.  *Id*.

To establish a claim for disparate discipline, as previously noted, Amos must show (1) he is a member of a protected class; (2) he was qualified for the position or benefit sought; (3) he was subject to an adverse employment action; and (4) he suffered from a differential application of work or disciplinary rules.  *Spivey*, 196 F.3d at 1312.  Amos clearly meets elements one and two.  Elements three and four are at issue.

Turning to element three, a reprimand that has a meaningful adverse effect on an employee's working conditions may be cognizable.  *Keenan*, 707 F.2d at 1277. However, it does not constitute an adverse employment action when the employee suffers no tangible harm as a result.  *Davis*, 245 F.3d at 1240-1241; *Wallace*, 212 Fed. Appx. at 801-02; *Braswell*, 586 F.Supp.2d at 1306.  Amos presents no evidence that the write-up led to tangible harm in the form of loss of pay or benefits, or lost opportunity for a job promotion. Further, he acknowledges that the write up remained in his file for only six months pursuant to the collective bargaining agreement.  *See* Doc. 95, Tab 1, Amos Depo. at 138:4-9.  As a

result, Amos cannot establish a *prima facie* case of discrimination as to the write up and Defendant's summary judgment request on this claim merits granting.

### ii.   Disparate Treatment in Equipment and Schedule Assignments

As to the *prima facie* case of discrimination, Amos is a member of a protected class (element 1) and was qualified for his job as transport driver (element 3).  Thus, the only elements left to review are whether he was subjected to an adverse employment action and whether he was treated differently than a similarly situated comparator outside the protected class.

For element 2, Amos must show he experienced an adverse employment action with regard to the assignment of equipment, specifically trucks.  As discussed previously with Melton, while there might be instances where a truck assignment might approach a material change in the terms, conditions and privileges of employment.  Here, the Court does not find it rises to such a level.  *Supra Tinkle*, 16 Fed. Appx. at 817; *Arrieta*, 2008 WL 5220569 at *6; *Horn*, 2008 WL 2466696 at *9; *Hamilton*, 2007 WL 2010938 at *6.

Even if Amos were able to show that truck assignments might constitute an adverse employment action, he still cannot establish a *prima facie* case because he fails to offer a similarly situated comparator (element 4).  Amos asserts that a white driver, Brian Tusberg, refused to drive a truck which he was assigned, but he does nothing to show how he is similarly situated to Amos.  Other than stating Tusberg is white, Amos fails to show how this is relevant to his *prima facie* case.  In fact, Amos testified that he never actually refused to

drive a truck.  *See* Doc. 95, Tab 1, Amos Depo: 154:15-155:16.  As such, Amos has not

provided a valid comparator and fails to meet element 4.  Moreover, even if he had

established a *prima facie* case, National Dairy and Dairy Fresh have offered a legitimate

nondiscriminatory explanation for the assignment of trucks.  Specifically, that the trucks are

assigned to the route, not the driver.  As a result, summary judgment should be granted on

this claim.

Moving to the schedule assignments, Amos merely makes unsupported allegations and

provides no evidence beyond his conclusory statements that less senior whites were given

overtime instead of him.  *See* Doc. 120 at p. 45 and p. 85.  Amos provides four names - Jesse

Ware, Joey Lassiter, Danny McDuffie, and Fred Moegenberg - but other than offering their

names, he does nothing to show how they are similarly situated comparators.  As such, he

fails to establish a *prima facie* case of disparate treatment as to the overtime assignments.[15]

### iii.    Disparate Treatment in Protection of Property While At Work

Other than making a statement that his vehicle was vandalized while it was in the

Dairy Fresh parking lot and the incident was allegedly not investigated, Amos makes no

attempt to show how this constitutes discrimination.  *See* Doc. 120 at p. 48 and p. 85.

Consequently, there is not showing of a *prima facie* case and the Court finds that summary

---

[15]     The Court notes that Defendants also assert his claims are time barred.  That
would certainly be true as to any claims before March 2004.  However, Amos' statement about
the time frame is not quite as black and white as Defendants argue.  While he does state much
relates to "2000 to 2003," Amos immediately follows this with a statement that he doesn't "have
a particular time frame."  However, because Amos is unable to establish a *prima facie* case of
discrimination, the Court need not address this argument with specificity.

judgment is appropriate.

### iv.     Recognition as Union Steward

To the extent Amos once asserted this claim against Dairy Fresh and National Dairy, the Court finds Amos abandoned the claim by failing to address it substantively.  He merely makes passing references regarding management in the statement of facts section of his response to summary judgment.  *See* Doc. 120 at p. 43-44.  In his analysis section, Amos does nothing to show how National Dairy or Dairy Fresh discriminated against him as a steward.  *Id*. at p. 85.  In fact, the header to the section states "Disparate Treatment by the union."  *Id*.  As such, the Court finds that Amos has restricted those claims to Defendant Teamsters Local 991.  Even if he had not, Amos does nothing to establish a *prima facie* case of discrimination beyond conclusory statements that management did not validate his position and preferred Clinton Hobbs as a steward.  *Id*. at p. 44.  Therefore, summary judgment shall be granted.

### v.     Hostile Work Environment

As with Melton and Brooks, the Court will address this claim later in the opinion.

## B.     Teamsters Local 991

Amos asserts two claims against the Union.  First, Amos argues he was never fully recognized as a union steward or fully involved in the union grievances.  *See* Doc. 120 at p. 43-44 and p. 85.  Second, Amos asserts that the Union did not represent him fairly with

regard to a January 16, 2002 suspension.[16]   The Court will now address each in turn.

### i.      Recognition as Union Steward

Amos avers he was never fully recognized as a union steward and that rather than remedying the situation, the Union "sat back and did nothing."  *See* Doc. 120 at p. 85.  As a result, "Amos came to believe that the union was discriminating against him."  *Id.* However, belief is insufficient to sustain a claim for § 1981 race discrimination.  Moreover, the evidence cited by Amos merely states "*Id.*" thus referring to the previous citation.  In looking at the previous citation, it relates solely to deposition testimony on the incident involving cars being vandalized.  *See* Doc. 120 at p. 85.  As such, this evidence is supremely useless in supporting the claim of race discrimination in recognition as a union steward. Therefore, the claim fails and summary judgment is granted.

### ii.     Representation on January 16, 2002 Suspension

The Court need not address the substantive merits of this claim because it is clearly barred by the statute of limitations.  Amos complains of the Union's representation decision as they relate to his January 16, 2002 suspension.[17]   Some question exists as to whether a two year or four year statute of limitations applies.  Regardless, the claim is clearly barred, so this

---

[16]      In two places, Amos states the union did not fairly represent him with regard to his "two suspensions," but he only discusses the January 16, 2002 suspension.  *See* Doc. 120 at p. 45 and p. 85.  As such, any other claim pertaining to a suspension is deemed abandoned by his failure to address it with specificity and the Court will only look to the January 16, 2002 suspension.

[17]      Amos was originally terminated, but the Union pursued a grievance and obtained his reinstatement through a settlement reached just prior to arbitration.  *See* Doc. 102 at p. 16.

Court need not address which statute of limitations applies.[18]  Therefore, summary judgment

is due to be granted.

## X. PIERRE HARVEY

Harvey only asserts claims for disparate discipline against National Dairy and Dairy

Fresh and no claims against the Union.  *See* Doc. 120 at p. 48-49 and p. 86-87.  As previously

discussed as it relates to Amos, Harvey's claim for disparate treatment as to the April 16,

2006 write up for being off route fails.  Harvey asserts he and Amos were disciplined

---

[18]        The Union states that the claim against the Union was one recognized before the 1991 amendments to § 1981.  Therefore, the Union avers it would be covered by the two year statute of limitations.  In contrast, § 1981 claims which are made possibly by the 1991 amendments would be covered by the four year statute of limitations in 28 U.S.C. § 1658(a).  *See Baker v. Birmingham Bd. Of Educ.*, 531 F.3d 1336, 1338-39 (11th Cir. 2008) (Plaintiff's § 1981 claims of race discrimination and retaliation arose under a post-1990 Act of Congress and are therefore covered under § 1658's four year statute of limitations); *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, (§ 1658 applies only to claims affected by the 1991 amendments to section 1981, not the entire act).  *Baker* seems to imply that since § 1981 was amended in 1991, all actions under § 1981 now have a four year statute of limitations.  *See Baker*, 531 F.3d 1337-39.  *Johnson* takes the opposite approach, if a § 1981 cause of action already existed prior to the 1991 amendments, then it is still covered by the state's borrowed statute of limitations and not the general federal catch all from § 1658.  This Court is bound by the Eleventh Circuit's ruling in *Baker*.  Further, the 1991 Act defined the key "make and enforce contracts" language in § 1981 to include the "termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).  The United States Supreme Court in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004), stated that "the 1991 Act fully qualifies as "an Act of Congress enacted after [December 1, 1990]" within the meaning of § 1658. Because [the] hostile work environment, wrongful termination, and failure to transfer claims did not allege a violation of the pre-1990 version of § 1981 but did allege violations of the amended statute, those claims "ar[ose] under" the amendment to § 1981 contained in the 1991 Act." *Jones*, 541 U.S. at 383, 124 S.Ct. at 1846; *see also Baker*, 531 F.3d. at 1338 (citing *Jones*).  Amos asserts claims relating to discrimination for termination and suspension.  Therefore, in keeping with the above, this Court is of the opinion the applicable statute of limitations is four years.  However, even if this Court is in error and the statute of limitations is two years, the claim is still barred.

differently than white drivers because they received a write-up for being "off route" on April 13, 2006.  *See* Doc. 120 at p. 19-20, p. 45-47, p. 48-49, p. 83-84, and p. 86.  Onorato wrote them up because they were parked in the Northside Mall parking lot for an extended lunch period.  *Id*.  Like Amos, Harvey presents no evidence that the write-up led to tangible harm in the form of loss of pay or benefits, or lost opportunity for a job promotion.  *Id*.

Harvey also complains he was disciplined for not picking up empty milk crates even though he had no room in his truck for them.  *Id*. at p. 49 and p. 86-87.  As aptly noted by Defendants, this claim is not properly before this Court because it occurred after the filing of this lawsuit and the amended complaint.  *See* Doc. 124 at p. 47.  A careful review of the amended complaint shows this allegation is nowhere to be found.  *See* Doc. 51.  Furthermore, the incident itself occurred <u>after</u> the amended complaint was filed and therefore there was no way it could be included.  As a result, the claim is due to be dismissed and summary judgment granted as to Plaintiff Harvey.

## XI. HENRY CODY

**A.     National Dairy and Dairy Fresh**

Cody asserts claims for disparate discipline, disparate treatment in training and equipment assignments, and disparate treatment in failing to protect his personal property.  *See* Doc. 120 at p. 87-92.

### i.     Disparate Treatment in Training

Like Brooks, Cody asserts he "received inadequate training as compared to white

drivers." *See* Doc. 120 at p. 87.  He states this lack of training meant "his learning curve on the job was slower than for the white drivers" and put him "at risk of losing his job at the outset since without adequate training he could well have made mistakes with the customers that could have cost him his job."  *Id*.  Cody does nothing to show how this fits into the *prima facie* framework of the *McDonnell Douglas* analysis.  There is no argument or evidence (beyond conclusory assertions) that the failure to train constituted an adverse employment action as required to establish a *prima facie* case.  While he offers the name of a white comparator - Jesse Farris - he does nothing to show whether this person is similarly situated.  As such, Cody fails to establish two of the four required elements for a *prima facie* case of discrimination as to training.  In addition, he does nothing to show pretext in Defendants assertion that training is not required because they have a policy of only hiring experienced drivers.  Summary judgment must be granted.

> ii.    **Disparate Treatment in Equipment**

As with the other plaintiffs who asserted claims for "bad trucks," Cody's claim must also fail.  As to the *prima facie* case of discrimination, Cody is a member of a protected class (element 1) and was qualified for his job as transport driver (element 3).  Thus, the only elements left to review are whether he was subjected to an adverse employment action and was treated differently than a similarly situated comparator outside the protected class.

For element 2, Cody must show he experienced an adverse employment action with regard to the assignment of equipment, specifically trucks.  As discussed previously with

Melton and Amos, while there might be instances where a truck assignment might approach a material change in the terms, conditions and privileges of employment, in this case the Court does not find it rises to such a level. *Supra Tinkle*, 16 Fed. Appx. at 817; *Arrieta*, 2008 WL 5220569 at *6; *Horn*, 2008 WL 2466696 at *9; *Hamilton*, 2007 WL 2010938 at *6.

But even if Cody were able to show that truck assignments might constitute an adverse employment action, he still cannot establish a *prima facie* case because he fails to offer a similarly situated comparator (element 4).   As such, Cody has not provided a valid comparator and fails to meet element 4.   Finally, even if he had established a prima facie case, National Dairy and Dairy Fresh have offered a legitimate nondiscriminatory explanation for the assignment of trucks, which Cody does not show to be pretext. Specifically, that the trucks are assigned to the route, not the driver.   As a result, summary judgment is granted on this claim.

### iii.    Disparate Treatment in Protection of Property While At Work & Parking Location

Other than making a statement that his vehicle was vandalized while it was in the Dairy Fresh parking lot and the incident was allegedly not investigated, Cody makes no attempt to show how this constitutes discrimination. *See* Doc. 120 at p. 89-90.   Further, Cody states he wanted to park in a handicapped space where white drivers were parking. *Id*. at p. 51 and p. 89-90.   To show a disparate treatment claim, Cody must show (1) he is a member of a protected class; (2) he was qualified for the position or benefit sought; (3) he was subject to an adverse employment action; and (4) he suffered from a differential

application of work or disciplinary rules.  *Spivey*, 196 F.3d at 1312.

Cody cannot show elements two, three, or four.  First, Cody cannot show he was entitled to park in the handicapped lot.  Specifically, Cody was not on any type of medical restrictions nor is he disabled.  *See* Doc. 96, Tab 5, Cody Depo. 164:18-20.  As such, he cannot show he was entitled to park in the handicapped spots.  Next, Cody cannot show that the failure to let him park in a handicapped spot constitutes an adverse employment action, especially since it has no tangible effect on pay, benefits, or the opportunity for a job promotion.  Finally, though he asserts that "Arby," a white employee, was allowed to park there, he fails to show how Arby is a similarly situated comparator especially in light of the evidence presented by Defendants that the only white employee allowed to park in the handicapped spots was under a doctor's restriction for an injury.  *See* Doc. 101 at p. 54.  Consequently, there is not showing of a *prima facie* case and the Court finds that summary judgment is appropriate.

### iv.    Disparate Discipline

Cody asserts three claims for disparate discipline: (1) Write-Up for being late and (2) Write-Up for "dump" in his trailer..  To establish a *prima facie* case of disparate discipline, Cody must establish: (1) he is a member of a protected class; (2) he was qualified for the position or benefit sought; (3) he was subject to an adverse employment action; and (4) he suffered from a differential application of work or disciplinary rules.  *Spivey*, 196 F.3d at 1312.  Elements one and two are not at issue as Cody is a minority and was qualified for his

position as a transport driver.  So the Court will now address elements three and four.

"[N]ot all conduct by an employer negatively affecting an employee constitutes adverse employment action" and to prove an adverse employment action "an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1238.  To support that claim "the employer's action must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way" and thus to provide an adverse employment action, a plaintiff "must show a *serious and material* change in the terms, conditions, and privileges of employment." *Id*. at 1239 (emphasis in original).  Moreover, the employee's subjective view is not controlling. *Id*.

A reprimand does not constitute an adverse employment action when the employee suffers no tangible harm as a result. *Davis*, 245 F.3d at 1240-1241; *Wallace*, 212 Fed. Appx. at 801-02; *Braswell*, 586 F.Supp.2d at 1306.  Cody presents no evidence that the reprimands/write-ups led to tangible harm in the form of loss of pay or benefits, or lost opportunity for a job promotion.  In fact, beyond his conclusory statements that he has made out a *prima facie* case, Cody does nothing to show how most of these write ups had a material impact on his employment.

For the first write-up complaint, a review of the cited evidence shows that the testimony does not relate to tardiness, but rather the write up was for Cody's actions at the Dairy Fresh Jefferson Branch location. *See* Doc. 99, Tab 19, Parish Depo. at 107:10-109:1. More specifically, the write up pertains to an incident where Cody damaged the gate at the

Jefferson Branch location when he hit it and when confronted by the location manager, Cody was allegedly insubordinate.  Regardless of the reason for the write up, this still does not show how it was an adverse employment decision.  As such, Cody fails to establish a *prima facie* case as to this write up.  Moreover, even if he had, Cody has done nothing to rebut the fact Defendants honestly believed Cody had been insubordinate.  For the remaining "dump" write up, Cody still fails to show how it constitutes an adverse employment action since it apparently does not affect his pay, benefits, or lost promotion.  Based on the above, Cody's claims for disparate discipline fail and summary judgment is granted.

**B.     Teamsters Local 991**

Cody makes no references to claims against the Union in his response to summary judgment and therefore summary judgment shall be granted.  *See* Doc. 120 at p. 49-52 and p. 87-90; Doc. 122 at p. 3-4.

### XII.  HOSTILE WORK ENVIRONMENT BY MELTON, BROOKS, AND AMOS

Melton, Brooks, and Amos also assert a claim for hostile work environment.  Harvey and Cody, to the extent they may have asserted claims in the Amended Complaint, abandoned those claims when they failed to address them in the response to the motions for summary judgment.

Like discrimination claims, hostile work environment claims are analyzed under the same standards of proof and employ the same analytical framework as Title VII cases. *Bryant v. Jones*, 575 F.3d 1281, 1296 n. 20 (11th Cir. 2009).  Thus, to establish a hostile

work environment claim under § 1981, "an employee (or former employee must show harassing behavior sufficiently severe or pervasive to alter the conditions his or her employment." *Id.* (quoting *Pa State Police v. Suders*, 542 U.S. 129, 133, 124 S.Ct. 2342, 2347, 159 L.Ed.2d 201 (2004)) (internal quotations omitted).  To show this, the plaintiff must meet the following elements: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.  *Id.* (citing *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002)).  Generally speaking, element four is where most hostile work environment claims get caught up.  When looking at the fourth element, courts use both an objective and subjective test.  *Miller*, 277 F.3d at 1276 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-71, 126 L.Ed.2d 295 (1993)).  Therefore, "to be actionable the harassment must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Bryant*, 575 F.3d at 1297 (quoting *Miller*, 277 F.3d at 1276); *accord Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 370-71, 126 L.Ed.2d 295 (1993).  The factors to consider for the objective severity of the harassment include (1) the frequency of the contact, (2) the severity of the contact, (3) whether the conduct is physically threatening

or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's job performance. *Bryant*, 575 F.3d at 1297 (citing *Harris*, 510 U.S. at 23, 114 S.Ct. At 371; *see also Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997)). Conduct is objectively severe when the workplace is permeated with intimidation, ridicule, and insult. *Miller*, 277 F.3d at 1276-77; *see also Smithers v. Wynne*, 319 Fed. Appx. 755 (11th Cir. 2008) (citing *Miller* and stating same). Moreover, no one factor is determinative; the Court takes a "totality of the circumstances approach." *Mendoza v. Borden*, 195 F.3d 1238, 1246 (11th Cir. 1999).

The Supreme Court has noted that "teasing, offhand comments, and isolated incidents" do not constitute discriminatory changes in terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 2284, 141 L.Ed.2d 662 (1998) (citation omitted). In other words, the "standards for judging hostility are sufficiently demanding to ensure that [discrimination laws do] not become a general civility code." *Id.* at 788, 118 S.Ct. at 2283-84 (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S.Ct.998, 1002, 140 L.Ed.2d 201 (1998)) (specifically applying in Title VII context). A plaintiff may have a viable hostile environment claim even if the racial remarks were not directed at him. *Edwards*, 49 F.3d at 1522 (citing *Busby*, 931 F.2d at 785). Remarks and conduct targeted at others "may contribute to the overall hostility of the working environment." *Brantley v. City of Mason*, 390 F.Supp.2d 1314, 1324 (M.D. Ga. 2005) (citation omitted). A plaintiff may also support a claim of hostile work environment by the

use of harassing conduct he learned of through hearsay, so long as he was aware of the harassing incidents at the relevant time at which he alleges he experienced the hostile environment." *Id.* (citing *Carter v. Chrysler Corp.*, 173 F.3d 693, 701 (8th Cir. 1999); *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2nd Cir. 1997)).   However, the Court must first look to whether the conduct is threatening or humiliating, and whether it unreasonably interfered with plaintiff's performance at work. *Edwards*, 49 F.3d at 1522.

A.     **Plaintiffs' Complaints**

Melton specifically complains about (1) a racially inappropriate joke told to him by Wayne Brown, (2) Melton's belief that Holt opined others were racists, (3) an overheard conversation between Onorato and Holt pertaining to the termination of a black employee, (4) a racially offensive joke told to Onorato in Melton's presence, (5) black employees were subject to harsher discipline than whites and (6) various incidences unrelated to Melton. *See* Doc. 120 at p. 75-77; *see also* Doc. 97, Tab 9, Melton Depo 167: 20 - 168:16, 283:1 - 285:5. The only specific racial comments on which Melton relies are the two racially offensive jokes.   The conversation between Holt and Onorato had no specific reference to race, but Melton still asserts his unsupported assumption as a fact. *See* Doc. 120 at p. 76 (citing Melton deposition references).

Brooks specifically contends that he was treated disrespectfully by Shipping Supervisor Tim Brown when Brown demanded that Books leave the cooler.   Brooks, in the complaint filed against Tim Brown, stated that Brown had a "real nasty attitude." *See* Doc.

96, Tab 3, Exhibit 30.  Brooks does not allege that racial language was used, but felt that he was treated worse than white drivers.  *Id*.  In his response to summary judgment, Brooks cites to excerpts from Holt's deposition to support his claim that another employee also complained about this.  Brooks states "[i]n fact, it was McNealy who had reported Tim Brown to HR for using this term against himself and other black employees."  However, a review of the cited deposition shows that the questions <u>not</u> the answers state that information.

For example, the testimony cited as support for the above quote is below:

> Q: Did you know that Brian McNealy had reported Tim Brown to human resources for using the word – the N word and for calling people – his people monkeys?
> Ms. Merritt: Object to the form.
> A: What's the name?
> Q: Bruce McNealy
> A: No

*See* Doc. 98, Tab 16, Holt Depo. 73:4-11.  Clearly, Holt did not testify that McNealy made such a report, but rather that Holt did not know of any such report.  Rather, counsel attempts to use her own questions as support for the claim.  As such, it is not only inaccurate and useless for summary judgment purposes, but also misleading to the Court.  He also avers that "[a]s argued, Brooks is entitled to bring evidence known to others to support his claims that Dairy Fresh allowed a hostile work environment to flourish at Brooks' workplace.  So long as he can show that he was the recipient of a racially hostile incident during the relevant time from [sic] of this lawsuit, he can bring in all the evidence presented by others so long as it contributed to the single, objectionable action on the part of Dairy Fresh of maintaining an environment hostile to blacks."  *See* Doc. 120 at p. 82.  "Brooks incorporates by reference

the incidents of racial hostility reported by the other plaintiffs in this lawsuit." *Id.*

Amos acknowledges that his incident occurred in October 2003 which is outside the statute of limitations, but says that such a complaint "bolsters the claims of a hostile work environment of the other plaintiffs." *See* Doc. 120 at p. 86. Morever, he also states he "is entitled to rely upon all the evidence of a hostile work environment brought by the other plaintiffs in this lawsuit so long as one incident of such hostility was directed at him during the time frame of this lawsuit." *Id.*

**B.    Analysis**

Amos recognizes that his complaint fell outside the statute of limitations. The Supreme Court has determined that an employee need only timely file a single charge of harassment for the entirety of the hostile work environment claim to be timely filed. *Morgan*, 536 U.S. at 117-18, 122 S.Ct. at 2075. What isn't so clear is whether Amos may use the allegations of the others to make his hostile work environment claim a timely allegation. Amos cites no support to show that he may rely on other's claims in order to make his hostile work environment claim timely. However, the Court need not analyze this issue because his claims fail regardless as discussed below.

All three plaintiffs attempt to rely on each other's allegations, but miss one crucial point. To rely on the evidence, each must show that he was aware of those incidents at the relevant time he alleges the hostile work environment. *See Edwards*, 49 F.2d at 1522 (citation omitted) ("some of the incidents relied upon were not made known to [plaintiff]

until after her termination and, therefore, could not have contributed to her subjective view of a hostile environment."). Melton was terminated on January 27, 2007. *See* Doc. 120 at p. 22. Therefore, he cannot rely on the incident complained of by Brooks which occurred on November 20, 2007. The incident alleged by Amos occurred in October 2003 which is prior to Melton's start date of August 16, 2004 and Brooks' start date of October 2006. *See* Doc. 120 at p. 21, 37 and 86. Consequently, neither may rely upon it as a basis for their subjective views of a hostile environment during their respective employment periods. More importantly, none of the three plaintiffs make any attempt to show they knew of each allegation during the relevant time frame. As such, use of each other's allegations cannot be permitted and each must stand on his own claims of a hostile work environment.

The remainder of the allegations not detailed above concern alleged patterns of discrimination practiced against black employees which the Eleventh Circuit has held constitute discrete acts that must be challenged as separate statutory discrimination and retaliation claims and cannot be brought under a hostile work environment claim that centers on discriminatory intimidation, ridicule, and insult. *McCann v. Tillman*, 526 F.3d 1370, 1379 (11th Cir. 2008) (citations omitted). As such, the Court may only look to claims that center on "discriminatory intimidation, ridicule, and insult."

Much like *McCann*, the two jokes over Melton's three year employment (2004-2007), although offensive, are too sporadic and isolated to establish that National Dairy and Dairy Fresh's conduct was so objectively severe or pervasive as to alter the terms and conditions

of his employment.  *Id.*; *see also Freeman v. City of Riverdale*, 330 Fed. Appx. 863, (11th Cir. 2009) (citing *McCann* and reiterating holding that sporadic and isolated incidences are insufficient to satisfy the objective perception prong).  Next, Brooks complains solely of the incident involving Tim Brown in which he only speculates involves racial discrimination. No racial slurs or any other overtly racial comments were made, but rather, Brook merely believed it was racially motivated.  Furthermore, even if it was discriminatory, a single incident is insufficient to satisfy the objective perception prong.  Therefore, Brooks' hostile work environment claim also fails.  Finally, since Amos cannot rely on the claims of others, his single claim occurring back in 2003 fails for two reasons.  It is untimely and is insufficient to satisfy the objective perception prong.

For all these reasons, the hostile work environment claim asserted by Melton, Brooks, and Amos fails and summary judgment is granted.

## XIII.  CONCLUSION

Pursuant to the foregoing *Memorandum Opinion*, the Court grants the *Motion for Summary Judgment of Defendants National Dairy Holdings, L.P. and Dairy Fresh of Alabama, LLC* (Doc. 94) and the *Motion for Summary Judgment of Defendant Teamsters* (Doc. 102).  An appropriate judgment will be entered.

DONE this 31st day of March, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE